Plaintiff brought this action to foreclose a mortgage upon real property and to cancel a satisfaction thereof on the ground that the latter was forged. From a judgment in favor of the defendants, that the satisfaction was genuine and that the mortgage debt had been fully paid, the plaintiff appeals.
On April 12, 1918, defendant Anne Swenson was the owner of certain real property in New England, North Dakota; on that date the defendant Anne Swenson and her husband, executed a mortgage to E.F. Tallmadge of Groton, New York, in the sum of $750, payable on April 12, 1923; as security for the payment of the note, the makers executed simultaneously a mortgage upon the New England property. The mortgage was filed for record on April 29, 1918. On May 14, 1918, Tallmadge sold and assigned the note and mortgage to the *Page 575 
plaintiff, who has at all times since, been the holder and assignee of the instruments. Plaintiff and his assignor reside in New York. The first coupon note, due April 12, 1919, was paid to plaintiff, through Carl Tallmadge, or the First National Bank of Dickinson; no other installment of interest, or any part of the principal, has been paid. The assignment was not recorded until January 9, 1924. The notes were payable at the office of Carl E. Tallmadge, New England, North Dakota. Carl was a son of E.F. Tallmadge; and the loan was negotiated through Carl, the father remitting the amount of the loan to his son at New England, who thereafter delivered the money to the defendants. The satisfaction of the mortgage, the genuineness of which is assailed, was dated and acknowledged July 10, 1918, and Edgar Tallmadge was on that date in New England, the place of residence of the notary who took the acknowledgment. There is testimony to the effect that the court found that between 1917 and 1919, blank satisfactions and blank assignments of mortgages, bearing the signature of E.F. Tallmadge, were seen in the office of the son Carl at New England; and on December 10, 1920, E.F. Tallmadge, testifying in another law suit, stated that his son, Carl, was his authorized agent for the purpose of making and placing loans of money on real property in North Dakota and elsewhere; and that his son handled and placed sums of money belonging to the father and handled the father's business in North Dakota. There is testimony which tends to show that plaintiff knew how E.F. Tallmadge did business; that he knew that coupons would be delivered for collection to Carl; that one such coupon, payable at Carl's office, was forwarded either to Carl or a local bank; that the same was paid and the money delivered to the plaintiff; that plaintiff had several conversations with E.F. Tallmadge regarding the nonpayment of the notes in suit and that he entrusted his business relating to this paper, largely to him; that before the money was paid by the defendants, Peter Swenson called at the office of the Register of Deeds and ascertained that the mortgage stood of record in the name of E.F. Tallmadge; that Swenson knew of the recording of the satisfaction of the mortgage, and would not pay until he saw that the satisfaction was on record. The court found substantially the foregoing facts. At the time the defendant paid the money through Carl and the Dickinson Bank, the bank or Carl did not have the note. The defendant demanded *Page 576 
the note, but was told it was not available, but that the obligation was discharged upon "the contract," that it was enough that the mortgage was discharged of record. This assurance satisfied the defendant.
It is the claim of the plaintiff that the vital findings are not sustained by the evidence; that the satisfaction is a forgery; that the note has never been paid to the plaintiff or the mortgage discharged; and that the note was not paid to any person having authority to receive payment. The trial court found that E.F. Tallmadge was, on July 10, 1918, the record holder of the mortgage sought to be foreclosed and that on that date he executed a satisfaction thereof and acknowledged the same before Carl E. Tallmadge, a notary public in and for Hettinger county, North Dakota. The court found also that the plaintiff had authorized E.F. Tallmadge to forward the notes and the mortgage for collection to his son and generally trusted the business in that connection to E.F. Tallmadge and son; that Carl Tallmadge forwarded the satisfaction of the mortgage in controversy for record to the register of deeds and that the same was afterwards returned to him; and that the defendants, at the time the note was paid, had no knowledge that the notes had been transferred and the mortgage assigned to the plaintiff, or that plaintiff had any interest therein. The foregoing findings are especially challenged as without substantial support in the testimony.
The deposition of the plaintiff was read at the trial. Therein he testifies that he had conversations with Edgar Tallmadge when the interest coupons were not paid; that the latter told him that times were hard and that he would write and find out what the conditions were at New England. He says he talked probably a dozen times with Edgar Tallmadge. The witness testifies that he never had any correspondence, conversation or dealings with Carl Tallmadge; but on cross-examination he says that he had had great confidence in Edgar Tallmadge, and that the reason he did not record the assignment of the mortgage was that Edgar Tallmadge hold him it was unnecessary. It appears that he purchased other mortgages from Edgar Tallmadge. The record quite clearly indicates that the latter acted as a loan broker who arranged loans, through his son Carl, and then sold them to clients in New York, among them, the plaintiff Robinson. He received a commission of 2 per cent, remitted by the son. The witness testified, respecting other mortgages, that he gave them to Edgar Tallmadge and *Page 577 
the latter sent them to the bank; and that he trusted Edgar with the coupons. The interest coupons of the note in suit, according to the plaintiff, were by him given to Edgar Tallmadge; Edgar appears to have sent them to his son Carl.
Edgar Tallmadge also testified in behalf of the plaintiff. He stated that he had been making loans in the vicinity of New England for twelve years; that his son would take the application for a loan and send it to him in New York for inspection, and that if he, upon inspection of the application, concluded that the loan would be first class, he ordered Carl to make it. Thereupon Edgar would "find a market for those loans in New York." The witness testified that when the loan to the defendants was made, he forwarded the check to his son Carl for the purpose of delivering the money to the borrowers; that he sold the loan to plaintiff Robinson; and that he assigned the same to him. Apparently the application for the loan was not accepted by Edgar Tallmadge until it had been brought to the plaintiff's attention and the latter had signified his intention to purchase the loan. Witness stated that he was never authorized by Robinson to collect the loan and that his son was without authority to collect it. His testimony that because of an arrangement with the plaintiff it was his duty to collect by foreclosure in his own name and at his own expense, if necessary, tends to contradict his evidence of absolute want of authority. He says that he never discharged the loan or executed a satisfaction. On cross-examination, he says that if the assignment had been recorded, Robinson "would probably have got me to look after it being recorded;" that when the mortgages became due, Robinson would give the instrument to the witness who would get the money due on it; that he foreclosed mortgages in his own name at the request of the purchasers, notwithstanding he had made complete assignments in all cases; that, under the agreement he had with his clients, it was his duty to foreclose when necessary and at his own expense. Not all of this testimony can readily be reconciled with the claim that Edgar Tallmadge was without authority to collect. We think the trial court could well find to the contrary. Purchasers who held unrecorded assignments in delivering the mortgages to Edgar Tallmadge to "get the money," or to foreclose, if necessary, under the arrangement mentioned, in his own name, impliedly conferred authority on him to execute and deliver satisfactions. There *Page 578 
is no testimony showing this inference of authority to be unwarranted. The witness said that he sent the papers at the "request" of the purchasers of the loans; that the plaintiff was familiar with the manner in which the loans were negotiated and knew all about it, because the witness told him and talked with him many times.
The witness Hilger, testifying for the defendants, stated that he had had business transactions with E.F. Tallmadge, had had correspondence with him, had written him and received letters from him; and that he was familiar with his signature. He identified the signatures of Tallmadge on several exhibits as the same signatures which were appended to letters he received from the latter. He then testified that he had dealings with and purchased mortgages through Carl Tallmadge in the latter's lifetime; and that in 1917 or 1918 he had seen blank assignments and satisfactions of mortgages in the office of Carl Tallmadge bearing the signatures of E.F. Tallmadge.
It should be noted that the witness E.F. Tallmadge testified in another case and there stated, without qualification, that Carl Tallmadge was his regularly authorized agent for the purpose of making and placing loans in North Dakota and elsewhere, and in such capacity handled money belonging to himself and his clients. The witness endeavored to explain away the effect of this testimony by saying that he had reference to a specific transaction, and that he signed the deposition while in the street and without carefully reading it. The language used by him, however, is broad and clearly indicates a general agency. We are satisfied that this testimony was entirely competent and admissible. The witness had previously stated, in the case at bar, that Carl was not at any time his agent.
It appears that the primary question is that of agency. If Carl E. Tallmadge was the agent of the plaintiff for the purpose of receiving payment of the note and the mortgage, and had authority to deliver a satisfaction of the mortgage and if he did deliver a genuine satisfaction, the judgment must be affirmed. There is, of course, no question that payment was made to Carl. It appears that Carl died before the money collected was remitted, and plaintiff has never, in fact, received payment.
We think that the trial court was justified in finding from the testimony which has been summarized, that Carl Tallmadge looked after the *Page 579 
business for his father in North Dakota; and that E.F. Tallmadge authorized Carl to receive payment or collect payment of the note and mortgage in controversy, and executed the satisfaction.
The next and most serious question in the case is whether these transactions are binding on the plaintiff, the holder of the note and of an unrecorded assignment, so as to discharge the instruments in his hands. It will be necessary to recapitulate, to some extent, the facts bearing on this point.
It is elementary, in the absence of authority, express or implied, to employ a subagent, that the confidence reposed in the agent by the principal is personal and may not be delegated so as to affect the rights of the latter. This rule is subject to modification by the circumstances in any given case. From usage or circumstances the power to delegate authority may be inferred. "If a principal constitutes an agent to do a business which obviously and from its very nature cannot be done by the agent otherwise than through a substitute, or if there exists in relation to the business a known established usage of substitution, in either case the principal would be held to have expected and authorized such substitution." Breck v. Meeker,68 Neb. 99, 93 N.W. 993, ¶ 1 of syllabus; Fanset v. Garden City State Bank, 24 S.D. 248, 123 N.W. 686. Unless specifically forbidden by the principal an agent may delegate his power to a subagent when "the agent cannot himself and the subagent can lawfully perform," and when "it is the usage of the place to delegate such power." Comp. Laws 1913, § 6362.
The record clearly discloses a relation of agency between Edgar Tallmadge and the plaintiff Robinson, the former being by agreement the agent of the plaintiff for the collection of the note and the mortgage involved in this litigation. This fact is not disputed. Pursuant to the understanding between the plaintiff and Edgar Tallmadge, both residents of Groton, New York, and for the convenience, presumably, of the plaintiff, the assignment of the mortgage, which would have disclosed the transfer of the note, was kept off the record. The testimony without contradiction shows that it was the deliberate purpose of the plaintiff to make Edgar Tallmadge his agent in handling the loan and looking after the collection of the note, and, if need be, the foreclosure of the mortgage. It would seem to follow that the plaintiff impliedly authorized Edgar Tallmadge, in view of the circumstances, and the usage *Page 580 
of the business, to delegate to a subagent, in New England, the duty to deliver the satisfaction of the mortgage and receive payment of the obligation secured by it. This is a well known custom of business and there is nothing in the record to suggest that either party intended to depart therefrom. The fact that all the papers were retained in the possession of the plaintiff, excepting the satisfaction, is not conclusive, in fact, in view of the specific agreement of agency, is not persuasive, against the existence of the authority to designate a subagent to handle the transaction in North Dakota. The testimony shows, without dispute, the existence of the relation of principal and agent for the purpose of collecting the indebtedness; and payment to one having authority pursuant to the arrangement to deliver a satisfaction of the obligation is binding upon the principal, notwithstanding he chose to retain control of the evidence of the indebtedness and of the assignment of the mortgage.
Plaintiff knew that father and son were working together. On the face of the principal note we find:
"First Mortgage Note Secured by Real Estate,
Negotiated by "CARL E. TALLMADGE."
The name of the son is in large capitals and in heavy black type. In the body of the instrument, again in capitals and heavy black type, it is recited that the instrument is payable, at the office of "Carl E. Tallmadge, New England, N.D., the interest coupons bear, on the margin, in heavy black capitals, the name of Carl E. Tallmadge; and in the body, again in large black capitals, recite that they are payable at the office of "Carl E. Tallmadge, New England, N.D." Thus did plaintiff know that the notes must be forwarded to Carl E. Tallmadge, where payment must, in any event, could, lawfully be made according to their tenor; and that, when final payment of the principal was made, either Carl, or someone at his office, must be prepared to accept payment and deliver a satisfaction of the mortgage. The principal note contains the privilege of prepayment of $100, or multiples thereof, on any interest paying date, after one year. Perhaps this explains the satisfaction, which was entrusted to Carl by his father, and the fact that it antedates the maturity of the principal obligation.
Such a relation subsisted between Edgar Tallmadge and the plaintiff *Page 581 
that it was the duty of the former to collect and, when necessary, foreclose in his own name; to him plaintiff would deliver the instruments for collection to be forwarded, presumably to the place where the notes were payable. Plaintiff evidently knew the close co-operation between father and son — the son's name, in screaming capitals, proclaimed this fact from the face of nearly every instrument in his possession pertaining to this loan. Even the mortgage bears upon its back, in bold, black capitals, "Tallmadge and Meyer." Edgar Tallmadge lived in the state of New York; whatever attention this loan might need in North Dakota, plaintiff knew Edgar would give it through a local agent, according to ordinary business custom. Can there be any doubt that plaintiff knew full well that the agent whom Edgar Tallmadge would select for this purpose would, in all human probability, be his own son and business associate, the man who had negotiated the loan; and that the defendants, lulled into security by the fact that the record showed the title to the mortgage in Edgar Tallmadge, might readily be induced to believe that Carl had full authority to deal with this loan? We think not.
The point is made that the plaintiff at all times retained possession of the note and the mortgage and that this fact shows that he never authorized any person to receive payment. Nonpossession of the evidence of the debt is a fact of material importance in determining whether agency existed; but it is not necessarily controlling. All the facts considered together may be and frequently are such as to repel the presumption which arises from the retention of the custody of the instruments evidencing the obligation. We think the statement in 2 C.J. 525, correctly expresses the general rule, as follows:
"The mere fact that the agent has not possession of the notes or securities at the time of payment is not conclusive that he has no authority to collect the same, but is only a circumstance to be considered in determining the question; and the facts and circumstances may be such that, notwithstanding the agent has not such possession, he has actual authority, expressed or implied, to make the collection."
And to the same effect, see 21 R.C.L. 868. Counsel for appellant relies strongly on Corey v. Hunter, 10 N.D. 5, 84 N.W. 570; Hollinshead v. John Stuart Co. (Hollinshead v. Globe Invest. Co.) 8 N.D. 35, 42 L.R.A. 659, 77 N.W. 89; Stolzman v. Wyman, 8 N.D. 108, *Page 582 
77 N.W. 285; Martinson v. Kershner, 32 N.D. 46, 155 N.W. 37, and other cases to the same general effect. These authorities are not in point for the reason that the facts are essentially different in all of them.
That authority was, in legal contemplation, given Carl by his father, the mortgagee is not open to serious dispute; and the trial court could properly infer authority to select Carl as subagent from the usage of the business and from all the circumstances. It is certain that plaintiff voluntarily put it in the power of the Tallmadges to impose upon the Sewnsons by receiving payment and not accounting to the owner of the loan.
The judgment is affirmed.
CHRISTIANSON, Ch. J., and BURKE, BIRDZELL, and NUESSLE, JJ., concur.