MATT HOLVICK, Respondent, v. JOHN E. BLACK, Walter Troxel, Frank J. Black, and The Federal Land Bank of St. Paul, Minnesota, a Corporation, Appellants.

(221 N. W. 71.)

Opinion filed September 24, 1928.

*E. R. Sinkler* and *G. O. Brekke,* for appellants.

*Ray O. Miller* and *Sullivan, Hanley, & Sullivan,* for defendant bank.

*C. D. Aaker,* for respondent.

BURR, J.   The defendant John E. Black is the father of the defendant Frank J. Black and they are known hereafter as father and son with reference to their own personal relations.   On January 20, 1920, the father was the owner of the real estate involved herein and on that day gave a mortgage thereon to the State Bank of Berthold to secure his note to the bank for $1,500, due December 1, 1920 and payable at the bank.   This mortgage was duly recorded April 17, 1920. The note was not paid and on January 30, 1923 he executed a demand

note for like amount, also payable at the bank. On February 20, 1923 the bank sold the two notes to the plaintiff, executed an assignment of the mortgage, and delivered the mortgage and the assignment to him. The plaintiff kept the notes, mortgage and assignment in his possession and later, for safe-keeping, deposited them in another bank; but did not record his assignment of the mortgage until November 12, 1925. After the plaintiff received his assignment of the notes and mortgage, the father and the defendant, Troxel, had negotiations for the sale and purchase of the major portion of the mortgaged premises. Black was to deed the land free of encumbrance but to do this was to get the money from Troxel and Troxel to get the necessary money, was required to borrow it. Consequently on July 20, 1923, he made application to the defendant, The Federal Land Bank, through the Carpio National Farm Loan Association, whose secretary-treasurer was E. T. McGovern. On December 24, 1923, Troxel and his wife executed a mortgage for $3,500 to the Federal Land Bank and the mortgage was recorded December 28, 1923. On the same day a satisfaction of the first mortgage was filed for record, which satisfaction was signed by the State Bank of Berthold through C. L. Stevenson, its president, and attested by W. J. Hughes, its cashier. The plaintiff in this case knew nothing about these transactions and did not authorize the bank to execute the satisfaction. On January 5, 1924 the defendant bank issued its draft on the First National Bank of St. Paul, for the sum of $3,500 less some expenses for abstract, filing fees, etc., making the draft payable to E. F. McGovern and the defendant Troxel. The draft was indorsed by McGovern and Troxel and paid on January 11, 1924, the proceeds being deposited by McGovern in the First National Bank of Carpio. Neither McGovern, Troxel, nor the Federal Land Bank, knew the plaintiff had any interest in the first mortgage or the notes secured thereby. Prior to obtaining the money from the Federal Land Bank, McGovern and Troxel had some conversation with the officers of the State Bank of Berthold regarding a satisfaction of this first mortgage and were told such satisfaction would be furnished by the bank upon payment of the amount due. No request was made for inspection of the notes or mortgage, no inquiry as to the ownership or where the instruments were, nor was any information given regarding plaintiff's rights. The record shows the plaintiff at no time made

the State Bank of Berthold his agent for collection nor for any other purpose. After McGovern had deposited the money in the First National Bank of Carpio he proceeded to disburse the proceeds of the draft at the request of the defendant Troxel. The record shows that so far as the defendant Troxel was concerned he made McGovern his agent to look after his rights and interests. The agreement between mortgagor Black and Troxel was that the former would receive a portion of the draft in order to pay off the first mortgage and Troxel directed McGovern to pay to C. L. Stevenson, president of the State Bank of Berthold, the amount due. McGovern issued his check on the First National Bank of Carpio to C. L. Stevenson, personally, and not to the State Bank of Berthold and Stevenson deposited the amount in the open account of Black, where it remained until the bank closed. For some reason or another Black issued three checks to the State Bank of Berthold, two dated December 11, 1924 and one May 27, 1925 and for $350, $751.50 and $543.94, respectively. Whether this was an attempt to juggle the account so as to show payment to the bank as plaintiff claims, or whether it was for some other purpose is not clear. None of the checks are marked cashed or otherwise show payment thereon, but the bank closed in December, 1924.

Owing to the fact that a sufficient loan could not be had, Troxel could not pay Black, Sr., in full for the land and so Black took his note for the amount remaining unpaid. No remittance of any kind was made to the plaintiff.

On April 10, 1925 the defendant, Frank J. Black, the son, recorded a deed from his father for the portion of the mortgaged premises not sold to Troxel, having received the deed some time between March 15, 1925 and the date of record. However, the record shows both father and son knew, on March 6, 1925, that the plaintiff claimed an interest under his mortgage, but both of them concluded plaintiff had no interest because a satisfaction was on record.

The further facts claimed by the plaintiff to show the inferiority of the mortgage held by the Federal Land Bank will be noted when we determine the bank's interest.

The plaintiff commenced this action to foreclose his mortgage. The issues involve the question of the priority of plaintiff's claim over the subsequent deeds and mortgage. The defendants set forth allega-

·tions to the effect that their interests are superior and the plaintiff's mortgage paid and discharged. The district court entered judgment in favor of the plaintiff against all of the defendants and the latter appeal—the Federal Land Bank separately and the other defendants jointly—all demanding a trial de novo.

The finding of the lower court that the notes and mortgage were not paid is amply sustained by the evidence, hence there is no merit in the appeal of John E. Black the mortgagor. He is bound by his note. The money paid by Troxel and McGovern for the satisfaction was deposited in Black's account and never disbursed by him to the holder of the note. He has not paid his note.

The evidence shows that shortly before the father sold the remainder of the land to his son, both father and son had an interview with the plaintiff and the three of them with Mr. Stevenson, the president of the State Bank of Berthold. At this meeting more or less discussion was had regarding plaintiff's claim and Stevenson stated it would all be cleared up. The Blacks knew the satisfaction had been recorded and felt that this disposed of the plaintiff's claim on the land. It was after this that the son received the deed from the father. Therefore the son's interest in the land is subordinate to that of the plaintiff.

There is no dispute but what McGovern was intrusted by Troxel to take charge of the loan proceedings with the Federal Land Bank for the clearing of the title and discharge of the mortgage. In other words, McGovern was made the general agent of Troxel for this purpose. Hence the latter is bound by whatever his agent did within the scope of his authority. The defendant Troxel relies upon the case of Robinson v. Swenson, 54 N. D. 573, 209 N. W. 982, as justifying the action of McGovern and relieving him from any liability. But the case cited is not in point. In the case at bar we do not find that the plaintiff had sent the note and mortgage to the State Bank of Berthold for collection, nor was it there for collection. There were no contractual relations between the plaintiff and the State Bank with reference to collection. The defendant says that by the failure of the plaintiff to record his assignment he held the State Bank of Berthold out to the world as the one who was authorized to execute a satisfaction of the mortgage. This relationship is the only one set up by Troxel as justification. He knew nothing of plaintiff's claim and therefore

he does not allege that outside of the failure to record the assignment, the plaintiff in any way misled him. It is true that in the case cited, this court said:

"Nonpossession of the evidence of the debt is a fact of material importance in determining whether agency, with consequential authority to receive payment, existed, but is not necessarily controlling."

But no agency of any kind has been shown. Possession or nonpossession is not involved. These conditions might be evidence of agency or lack of agency but there is no such relationship between the plaintiff and the bank. The bank did not have possession of the instruments. In the case of State v. Hanson, 55 N. D. 370, 213 N. W. 353, we held that even where the note was sent to a bank for collection that fact in itself did not prove agency for settlement otherwise than to receive cash. In the case at bar no inquiry was made to find whether the note was in the possession of the bank. McGovern did not ask to see it, did not inquire about it, but assumed the bank was the owner and relied upon the satisfaction given by the president. As said in Hollinshead v. John Stuart & Co. (Hollinshead v. Globe Invest. Co.) 8 N. D. 35, 43, 42 L.R.A. 659, 77 N. W. 89, McGovern and Troxel "knew the note was negotiable and that the quality of negotiability would adhere to it every moment until it reached maturity. He knew it was intended to pass from owner to owner by indorsement and that it was liable to pass thus at any moment, and he knew that the last person receiving it would require from his hands the full amount of the note. . . . He had in his own hands the means of absolute protection. He had only to see to it that he received his note when he paid his money. If he neglected this simple requirement, demanded not more by the law than by common prudence, he paid at his peril; and if loss occurs, he must bear it. One party or the other must suffer and he being the party in fault must bear the burden."

He also knew that under our statute the transfer of the debt secured by a mortgage carried with it the security. See § 6733, Comp. Laws. He knew that he had agreed to pay the money over to the mortgagor, relying upon the mortgagor paying the mortgagee and furnishing a clear title. While the assignment was executed by the State Bank of Berthold, the check was not made payable to the State Bank but to Stevenson, personally. The defendant Troxel and his agent, McGovern,

relied upon Stevenson in this matter and, apparently, their trust was misplaced, but they, being in fault, must bear the burden. It is clear that plaintiff's claim is superior to the rights of the defendant Troxel.

But the Federal Land Bank says we are not concerned with any relations between Black and Troxel or between the plaintiff and the State Bank of Berthold; McGovern was not our agent; we relied solely upon the record and knew nothing of plaintiff's interest; we paid no money and completed no deal until the satisfaction was recorded and that so far as we are concerned the plaintiff must suffer for his own carelessness in failing to record his assignment. In support of some of these contentions the defendants cite the case of Bjorkstam v. Federal Land Bank, 138 Wash. 456, 244 Pac. 981, where the court says:

"Under Federal Farm Loan Act (U. S. C. title 12, § 651) secretary-treasurer of local Farm Loan Association is not agent of Federal Land Bank making loan, but is public agent, whose authority parties dealing with him in that capacity were bound to know."

There is no doubt but what this is correct as a general statement. Of course, this does not preclude the Federal Land Bank making the secretary-treasurer of the local Farm Loan Association its agent if it sees fit, either directly or indirectly. It is merely a general statement that because of these relations the secretary-treasurer is not the agent. This same case cited, after showing that the bank and the association are separate and independent bodies, says (p. 983) :

"The secretary-treasurer thereof is solely and entirely agent of the association and of the borrower. That may be true in general and yet the secretary-treasurer might be the agent of the Federal Land Bank for certain purposes in dealing with its borrowers, and he may be the agent of one of the other parties for certain purposes. The question is not controlled by the nature of the Farm Loan Association and its transacting business through its secretary-treasurer with its borrower."

It is the claim of the plaintiff that when the Federal Land Bank sent its draft payable to McGovern and Troxel, it thus made McGovern its agent to wind up the deal and to disburse the money to those entitled thereto.

The facts special to the relation of the defendant Land Bank center around the giving of the mortgage to the bank. The application was

for a loan of $5,500 and therein Troxel stated, among other things, that he needed $4,000 of this amount to purchase the real estate involved, and also to purchase stock in the loan association to the amount of 5% of the loan granted. Further, he said:

"I further represent and guarantee . . . that there are no encumbrances or liens against the property described except as herein described. . . . I further represent that I am or will be when this loan is closed, in open and peaceful possession of the premises described and that my title thereto is not questioned nor do I know of any claims that might give rise to adverse claims of my possession. . . . I agree to furnish at my expense . . . abstract or certificate of title, acceptable in form to the bank, that will show the title perfect in me and a mortgage giving the bank a first lien on the property described."

Plaintiff's mortgage was not listed as one of the encumbrances on the land. In fact the application stated that there was no mortgage on the land. This application evidently was not acceptable to the Federal Land Bank on account of the size of the loan requested; but on September 5, 1923 the applicant accepted the amount stated in the letter of notification sent him from the bank offering him a loan of $3,500. The testimony shows an abstract of title was prepared and sent and at the time of the certificate of continuance dated October 27, 1923 the abstract showed title in Black with a mortgage on the land to the State Bank of Berthold. There is no testimony showing any correspondence with the Land Bank, any directions from the bank, or any knowledge on the part of any officer thereof. Evidently the abstract was again presented to the abstractors and at the time of the next certificate of continuance, dated December 28, 1923, the abstract showed a release of the mortgage to the State Bank of Berthold dated December 27, 1923, and recorded December 28, 1923 at 2: 30 P. M.; a deed from Black to Troxel dated December 1, 1923, and recorded December 28, 1923 at 2: 40 P. M.; and the mortgage to the Land Bank dated December 24, 1923 and recorded December 28, 1923 at 2: 50 P. M. As these three instruments were recorded at practically the same time and deal with the same general subject it is evident the entire transaction was handled by one person.

The mortgagor was giving the mortgage to the Land Bank and Mc-Govern is the only one shown by the record to be in charge of the transaction. After the abstract showed a clear title in the defendant Troxel with a mortgage to the Land Bank, the draft was sent. As the application said the loan was desired to purchase real estate and stock in the loan association, the draft was made payable to the secretary-treasurer of the association as well as to the mortgagor.

Do these facts show that McGovern was in any sense the agent of the Land Bank? We think not. Had the defendant bank a right to rely upon the record? We believe it did. Assignments of mortgages are such "conveyances" as need to be recorded to give notice to subsequent purchasers in good faith, and "if not so recorded are void as to subsequent purchasers of the mortgaged premises who purchase in good faith and for a valuable consideration, and first record the conveyances."

See Henniges v. Paschke, 9 N. D. 489, 81 Am. St. Rep. 588, 84 N. W. 350; Comp. Laws, § 5594. There is no doubt of the good faith of the Federal Land Bank and that it gave a valuable consideration for its mortgage. A mortgagee is a "purchaser" within the meaning of the recording statutes. See § 5595, Comp. Laws. This is not a case where the record shows the Land Bank furnished money to pay off a pre-existing debt. It is true Troxel made the loan for the purpose of buying the land, and devoted part of the loan to the purpose of paying the mortgages, but there is nothing to indicate the bank furnished it for that latter purpose or knew it was being used for that purpose. The bank did not have any relations whatever with Black, Sr., or the State Bank of Berthold. The only dealings it had with McGovern as the agent of Troxel is the furnishing of the money; and the making of the draft payable to both McGovern and Troxel does not make McGovern its agent. This is the nearest approach to agency that has been shown. The mortgage held by the Federal Land Bank is superior to plaintiff's mortgage because of the failure of the plaintiff to record his assignment until long after the mortgage was given to the Federal Land Bank and recorded. Hence the judgment must be modified to this extent, that the judgment will show the mortgages of the Federal Land Bank superior to the mortgages of the plaintiff and the mortgage of

the plaintiff superior to the rights of the remaining defendants, with costs to the Federal Land Bank against the plaintiff and to the plaintiff against the remaining defendants.

Nuessle, Ch. J., and Burke, Birdzell, and Christianson, JJ., concur.