[File No. 5946.]

ED BYRNE, Respondent, v. THE FEDERAL LAND BANK OF ST. PAUL, a Corporation, and the Nortonville National Farm Loan Association, a Body Corporate, Appellants.

(237 N. W. 797.)

Opinion filed July 29, 1931.

*John Thorpe, George I. Reinstad* and *Knauf & Knauf,* for appellants.

*Freerks & Freerks,* for respondent.

*Irving P. Whitehead, Peyton R. Evans* and *Zuger & Tillotson,* amici curiæ.

BURR, J. The Federal Land Bank of St. Paul was chartered under the provisions of the Federal Farm Loan Act and is engaged in the business of loaning money to farmers under the provisions of said act. The same act makes provision for the organization of other separate and distinct organizations known as Farm Loan Associations and in July 1918 the Nortonville National Farm Loan Association was chartered by the Farm Loan Board, under the provisions of the same act. Such farm loan association is empowered to issue shares of stock at a par·value of $5.00 each and a borrower in territory allotted to a farm loan association must apply for membership in such association and "subscribe for shares of stock in such farm loan association to an amount equal to five per centum of the face of the desired loan, said subscription to be paid in cash upon the granting of the loan. If the application for membership is accepted and the loan is granted, the applicant shall, upon full payment therefor, become the owner of one share of capital stock in said loan association for each $100 of the face of his loan, or any major fractional part thereof. Said capital stock shall be paid off at par and retired upon full payment of said loan. Said capital stock shall be held by said association as collateral security for the payment of said loan, but said borrower shall be paid any dividends accruing and payable on said capital stock while it is outstanding." Sec. 8 of the (U. S. C. title 12, § 733.)

There is no statutory provision limiting the amount of capital stock which may be issued by a farm loan association. The amount of stock depends upon the number of borrowers and the amount of the loans secured.

When the application of such prospective borrower for membership in the loan association is accepted, and upon filing his application with the farm loan association, he may "borrow from the Federal land bank through such association the sum necessary to pay for shares of stock subscribed for by him in the national farm loan association, such sum to be made a part of the face of the loan and paid off in amortization payments. . . . Sec. 9 of the act (U. S. C. title 12, § 742.)

The same section provides that shareholders of every national farm loan association shall be "individually responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements of such association to the extent of the amount of stock owned by them at the par value thereof, in addition to the amount paid in and represented by their shares." (U. S. C. title 12, § 744.)

When a prospective borrower applies for a loan the application is made through this farm loan association and when such "national farm loan association shall desire to secure for any member a loan on first mortgage from the Federal land bank of its district it shall subscribe for capital stock of said land bank to the amount of five per centum of such loan, such subscription to be paid in cash upon the granting of the loan by said land bank. Such capital stock shall be held by said land bank as collateral security for the payment of said loan, but said association shall be paid any dividends accruing and payable on said capital stock while it is outstanding. Such stock may, in the discretion of the directors, and with the approval of the Federal Farm Loan Board, be paid off at par and retired, and it shall be so paid off and retired upon full payment of the mortgage loan. In such case the national farm loan association shall pay off at par and retire the corresponding shares of its stock which were issued when said land bank stock was issued. The capital stock of a Federal land bank shall not be reduced to an amount less than five per centum of the principal of the outstanding farm loan bonds issued by it." See § 7 of the act (U. S. C. title 12, §§ 721, 722.)

In 1919 the plaintiff applied to the Nortonville Farm Loan Association for membership in order to secure an installment loan of $10,-000.00. His application for membership was accepted by the Nortonville National Farm Loan Association, and, he subscribed for one hundred shares of stock in the Loan Association at the aggregate par value

of $500.00 with request to the Federal Land Bank to deduct this amount from his loan. The Nortonville National Farm Loan Association issued him one hundred shares of stock in the association and the plaintiff pledged such shares to the association as collateral security for his loan.

The Nortonville Farm Loan Association thereupon subscribed for one hundred shares of stock in the Federal Land Bank. The Land Bank approved the loan and paid $9,500.00 to the plaintiff and $500.00 to the Nortonville Farm Loan Association, in payment of plaintiff's shares of stock in the farm loan association, as directed by plaintiff, and this latter amount was applied by the farm loan association upon the shares of stock of the Federal land bank bought by it because of plaintiff's loan.

The plaintiff defaulted in his payments and the bank notified the loan association of the default but the "association was unable to and did not make good such default . . . either by payment of the amount unpaid thereon in cash or by the substitution of an equal amount of Federal Farm Loan bonds with all unmatured coupons attached, or at all." Thereupon the bank foreclosed the mortgage, bidding in the land, getting a sheriff's certificate of sale, and "purchasing and taking the same for the full amount of the debt secured by said mortgage, the delinquent taxes and costs of foreclosure." Thus the plaintiff paid his loan.

After such payment of the debt the plaintiff demanded of the defendants the cancellation of his shares of stock in the association, the return of the $500.00 which had been deducted from his loan and used to pay for his shares of stock in the association, and which the loan association took to pay for the shares of stock in the Federal land bank, and the cancellation of the latter stock. When this demand was refused he brought this action to compel payment.

The complaint sets forth the facts regarding his relations to the association and the bank, the loan, the payment of the loan and the failure to comply with the demand. The complaint fails to allege that the loan association was solvent at the time he made his payment, or had any cash or property on hand by means of which it could pay him for his shares of stock.

The defendants demurred to the complaint and upon the demurrer

being overruled each answered. The answers deny that the farm loan association is a branch or agent for the land bank, and after setting forth the facts relative to the application for the loan and the issuance of the stock alleges the liability of the loan association upon this debt by reason of its endorsement to the note and mortgage in pursuance of the by-laws of the association; that the association had applied for the loan to be granted to the plaintiff and the bank forwarded to the association the proceeds of the loan to be delivered to the plaintiff upon receipt of "a qualified first mortgage" on the land; that the bank canceled and retired the stock of the association in the bank "held in connection with the aforesaid loan and did thereafter duly notify said association that said stock had been retired and the proceeds thereof had been paid off by applying the same as a credit to the defendant on the then existing matured and unpaid obligations of such association to said Bank;" that prior to the granting of this loan the bank had "made numerous other loans to the members of the said Nortonville National Farm Loan Association" and in each case the association had endorsed and become liable for the payment of the loan; that the association was, "from time to time prior to May 16, 1929" indebted to the bank and "is still so indebted to said Bank by reason thereof in the total sum of $66,926.23" and is further indebted and has oustanding liabilities in the aggregate sum of $195,500.00; that "at the time of the expiration of the period of redemption . . . and at all times since then, and at the present time said Association had and now has no funds whatsoever, and has no means of obtaining funds; that it has no reserve whatsoever and its only assets consist of the shares of stock in said Bank which are and at all times since issuance, have been pledged with said Bank as collateral security for the payment of the loans."

Both sides moved for judgment on the pleadings. Judgment was entered for the plaintiff against both defendants and they appeal.

It is the contention of the plaintiff that the Federal Land Bank and the National Farm Loan Association are in fact one and the same institution, the latter being an agency of the former, and therefore when the farm loan association took his $500.00 and issued shares of stock, said money was in fact taken by the land bank, as the loan association used it for the purpose of purchasing shares of stock in the land bank and these latter shares were in fact the property of the

plaintiff; that when his loan was paid the shares of stock in the bank and in the loan association were required to be cancelled and upon cancellation he was entitled to the return of his money.

The only way in which the plaintiff paid his loan was to allow it to go by default, have his farm mortgage foreclosed and bid in by the land bank who took it in full payment of the loan with costs. This procedure amounted to a payment of the loan and when the sheriff's certificate of sale was obtained the indebtedness was discharged. See Slettin v. First Nat. Bank, 37 N. D. 47, 163 N. W. 534.

Plaintiff says that because § 8 of the Federal Farm Loan Act (U.S.C. title 12, § 733) says that the shares of capital stock taken by the borrower in the farm loan association "shall be paid off at par and retired upon full payment of said loan" and because § 7 of the same act says that stock taken by the farm loan association in the Federal land bank shall be "paid off and retired upon full payment of the mortgage loan" he is entitled to the cancellation of the stock in both institutions and the recovery of his money.

The purpose of this Federal loan act is "to provide capital for agricultural development, to create standard forms of investment based upon farm mortgage, to equalize rates of interest upon the farm loans, to furnish a market for United States bonds, to create government depositaries and financial agents for the United States, and for other purposes." 39 Stat. at L. 360, chap. 245.

The machinery provided is not complex. In order to carry out the purpose of the act and facilitate the making of farm loans the law requires the organization of two corporations, which work in harmony. The continental United States is divided into twelve districts known as "Federal Land Bank Districts." The Federal Farm Loan Board is authorized to establish a Federal land bank in each of said districts; such land bank is organized under the direction of the Federal Farm Loan Board and stock therein issued. The capital stock must be not less than $750,000.00 divided into shares of $5.00 each, which shares may be held by individuals or by the United States or by the government of any state. The United States subscribes for whatever of the minimum capital remains unsubscribed, but receives no dividends upon the stock.

These farm land banks are authorized to make first mortgage loans to farmers. Such loans however are not made individually. The whole method is a co-operative one. Before first mortgage loans can be made upon farm lands it is necessary to organize another corporation known as a national farm loan association, composed of "borrowers on farm land mortgages" who become shareholders in such association. No one may be a borrower who is not at the time the loan is made or shortly thereafter "engaged in the cultivation of the farm mortgaged." Such loan can be made only to provide for the purchase of land for agricultural use; to provide for the purchase of equipment, fertilizer, etc., for the operation of the farm; or to provide buildings and improvements on the farm land. § 12 of the act (U. S. C. title 12, § 771).

A farm loan association may be organized by "ten or more natural persons who are the owners, or about to become the owners, of farm land qualified as security for a mortgage loan." Upon the incorporation of such association the board of directors is selected and articles of association are forwarded to the Federal Loan Board and if the articles of association, the solvency and character of the applicants and the value of their lands, are such as to meet with the approval of the Board a charter is granted. The prospective borrower is a stockholder in the loan association not in the Federal land bank. It is the corporation known as the "loan association" which is the stockholder in the Federal land bank. The two institutions are separate and distinct corporations, though both are necessary to carry out the purpose of the Federal loan act. See Bjorkstam v. Federal Land Bank, 138 Wash. 456, 244 Pac. 981; Holvick v. Black, 57 N. D. 270, 221 N. W. 71.

This relationship is not altered because the law requires additional stock in the land bank to be taken by the loan association when a new loan is secured, except for the provision of substitution to which we refer later. Thus when the plaintiff took stock in the "Nortonville Farm Loan Association" he became a member of that corporation, but he did not become a member of the Federal land bank. The stock taken by the loan association belonged to that corporation, and not to him. Hence the plaintiff has no cause of action against the Federal land bank. It is true upon payment of his loan the law required the cancellation of the stock taken in the Federal land bank by the farm loan association because of the loan granted to the plaintiff. The pleadings

and the stipulation of fact shows that such stock was cancelled; but the bank owed the plaintiff nothing. When plaintiff secured his loan he obtained from the bank the full $10,000.00. The bank paid $9,-500.00 to him and at his direction paid the farm loan association the remaining $500.00, which the loan association used to purchase the stock in the Federal land bank. Thus the bank retained no part of his loan. Naturally, upon payment of the loan and the cancellation of the stock in the bank taken by the loan association the Federal land bank would owe the loan association the face value of the stock. The statute makes provision for "substitution of loans" and thus when the plaintiff's loan was settled the farm association could make application for the same amount of a loan to another person and the stock taken by it in the land bank would stand in lieu of new stock. No such new loan was substituted and therefore, upon the cancellation of such stock, it was the duty of the land bank to pay to the association the amount of such stock provided this did not reduce the capital stock to less "than five per centum of the principal of the outstanding farm loan bonds issued by it" (§ 7 of the act [U. S. C. title 12, § 722]) and providing the farm loan association did not owe the bank such sum as could be used as an offset. It must be remembered that the stock in the bank taken by loan association is held by the Federal land bank as "collateral security for the payment of such loan" (indicating a certain liability for such loan on the part of the loan association) and further that where there is a "default under the terms of any indorsed first mortgage held by a Federal land bank under the provisions of this title, the national farm loan association through which said mortgage was received by said Federal land bank shall be notified of said default. Said association may thereupon be required, within 30 days after such notice, to make good such default, either by payment of the amount unpaid thereon in cash or by the substitution of an equal amount of Federal farm loan bonds, with all unmatured coupons attached." Section 25 of the act (U.S.C. title 12, § 921). The act makes provision for the appointment of a receiver in case "any national farm loan association has failed to meet its outstanding obligations of any description," and that "the personal liability of the stockholders in such liquidated association to the association shall survive such liquidation and shall be vested in the bank in that district, which may enforce the

same as fully as the association could if in existence." Sec. 29 of the act (U.S.C. title 12, §§ 961, 966). The defendants admit, and it is not disputed that the loan association was indebted to the Federal land bank at the time the plaintiff's loan was paid, consequently when the stock was cancelled the value of the stock was used by the land bank as an offset to a portion of the indebtedness of the federal loan association thus cancelling this portion of the debt. The Federal land bank therefore is not indebted to any one on account of stock.

The plaintiff claims, however, that the loan association is indebted to him, therefore should return the $500.00 which he paid for stock.

It is true the act says upon payment of his loan "the national farm loan association shall pay off at par and retire the corresponding shares of its stock which were issued when such land bank stock was issued." (U. S. C. title 12, § 721). The plaintiff however is a stockholder in a corporation. The corporation cannot pay off at par the stock held by the plaintiff if it be insolvent, or if it has no money. The pleadings and the stipulated facts admit the practical insolvency of the farm loan association. The shareholders are "individually responsible, equally and ratably, and not one for another, for the contracts, debts and engagements of such association to the extent of the amount of stock owned by them at the par value thereof, in addition to the amount paid in and represented by their shares." Section 9 of the act (U. S. C. title 12, § 744). Consequently it is possible for the plaintiff to be held for double liability.

Plaintiff contends that the pleadings do not show the insolvency of the loan association at the time of the re-payment of the loan, that is at the time the land bank bid in the property for the full amount. It may be the answers are somewhat indefinite on this point; but it is shown the Land Bank applied the value of the stock held by the loan association on its debts to the Bank, because of the inability of the association to pay them. Then, also if the association was insolvent at the time of the commencement of the action and is still insolvent, it cannot be compelled to pay plaintiff the value of his stock when it is not yet known whether he may lose, not only the $500.00 which he has already paid; but in addition be required to pay an assessment of $500.00 or part thereof. While the statute requires the retiring of the shares at par, it contemplates a solvent institution. The plaintiff, by merely

paying his loan, cannot escape the responsibility which he assumes as a stockholder. The relationship which he bears to the other shareholders and to the whole system is such that he cannot evade responsibility. When he applies for and receives a loan under the provisions of the act he takes the loan according to the tenor of the law. The act makes provision for earnings and for dividends on his stock, and it provides also that in case the dividends are sufficient the directors of the loan association "with the approval of the Federal Farm Loan Board" (U. S. C. title 12, § 721), may in their discretion pay off at par, and retire the stock even if the loan be not paid. The payment of the loan does not relieve the borrower from his liability as a stockholder. The only assets which a farm loan association has or can have are the shares which it takes in the Federal land bank to counterbalance the shares of stock in the association taken by the borrower, such dividends as the shares of stock in the land bank taken by the association may earn, and such "reasonable initial charges to be made against applicants for loans and to borrowers in order to meet the necessary expenses of the association" as specified in subdiv. 3 of § 11 of the act (U. S. C. title 12, § 761, subd. 3) but such charges can, "in no case exceed 1 per centum of the amount of the loan applied for; . . ." It is true the association may "acquire and dispose of property, real and personal, that may be necessary or convenient for the transaction of its business" and it may invest its earnings so as to have increased income; but this is the extent of its capital and assets. The statute contemplates that when the loan is paid the stock shall be cancelled and the necessary corollary of this is that the par value of the stock be returned; but it is evident from the statute that Congress had in mind the possibility that such farm loan association may become insolvent.

Section 29 of the act makes provision for the dissolution of a farm loan association upon insolvency, and the appointment of a receiver. The power to declare an association insolvent and to appoint a receiver therefor is vested in the Federal Farm Loan Board. But "no national farm loan association shall be declared insolvent by said board until the total amount of defaults of current interest and amortization installments on loans indorsed by national farm loan associations shall amount to at least $150,000 in the Federal land bank district; unless

such association shall have been in default for a period of two years." (U. S. C. title 12, § 961).

It is true the pleadings do not allege that the Federal Farm Loan Board declared this association to be insolvent; but the facts alleged in the pleadings show that the status described by the act obtains and it is therefore insolvent. Manifestly the association cannot be compelled to pay the plaintiff the value of his stock when it has no assets out of which the stock can be paid. This association has no property, received no dividends, has no earnings and there is no fund which the association can be compelled to distribute to its stockholders. The only source from which it could pay is this stock in the Federal Land Bank. The pleadings show this had been pledged and was held by the land bank as collateral. The plaintiff proceeds on the theory that as soon as the loan is repaid the farm loan association must "pay off at par and retire" the shares of stock in the association issued to him. The last paragraph of § 7 of the act (U. S. C. title 12, § 721) describes the procedure for subscription of stock in the Federal land bank and requires the association to subscribe for capital stock when it applies for a loan to a borrower. After making provision for this capital stock to be held as collateral to the loan it says:

"Such stock (that is the stock in the land bank taken by the loan association) may, in the discretion of the directors (that is the directors of the land bank), and with the approval of the Federal Farm Loan Board, be paid off at par and retired, and it shall be so paid off and retired upon full payment of the mortgage loan. In such case the national farm loan association shall pay off at par and retire the corresponding shares of its stock which were issued when said land bank stock was issued." (U. S. C. title 12, § 721).

But this is only a portion of the act. When we consider the act as a whole it is apparent Congress did not intend the farm loan association to pay off the stock at par when it had nothing with which to pay the stock.

The plaintiff is a stockholder in a corporation. He has rights therein, but he has also corresponding duties and liabilities. As shown heretofore he is individually responsible equally and ratably for the debts of the corporation in which he is a stockholder. Sec. 9 of the act (U. S. C. title 12, § 744). This provision for double liability is similar

to the one regarding liability of stockholders in banking corporations, both state and national. His responsibility to his corporation is the same.

As we have already pointed out the principle involved in the act is co-operative in its nature. It is only through the co-operation of his neighbors, with their assistance, upon their recommendation and the pledge of their liabilities he can secure his loan. They pledge their faith and credit to aid him, and he pledges his faith and credit to aid them. Having secured their co-operation and assistance and finding his loan paid, he now, wants to avoid his responsibilities to those who made it possible for him to get his loan. His rights are not superior to the rights of any other stockholder in the corporation. We have already shown that a solvent corporation cannot declare and pay dividends out of its capital stock so as to render itself insolvent (Ulness v. Dunnell, ante 95, 237 N. W. 208) and if a solvent corporation cannot do this, how may an inolvent corporation pay one stockholder for his stock? The plaintiff is co-operative when he desires a loan and needs the assistance of his neighbors; but becomes extremely individualistic when the loan is paid.

Plaintiff made a motion for judgment upon the pleadings, and thus admitted the truth of the statements made in the answers. Therefore, on the record he is a stockholder in an insolvent corporation. Not only is the capital stock impaired, so that he cannot receive the full value of his shares, but he is also liable for an assessment against him, not to exceed $500.00, as his contribution to the payment of the debts of the association.

The record showing the loan association to be insolvent, with no fund to pay its debts, let alone to retire its stock, one shareholder has no right to increase the indebtedness of the others by securing payment for his stock. If he avoids his responsibilities the burden of debt resting upon those who assisted him is increased. Plaintiff has no cause of action against either defendant and therefore the judgment of the lower court is reversed and the case dismissed.

CHRISTIANSON, Ch. J., and NUESSLE, BIRDZELL, and BURKE, JJ., concur.