[File No. 6037.]

AGRICULTURAL CREDIT CORPORATION, a Corporation, Appellant, v. GOTTLIEB G. HEIM, Respondent.

(243 N. W. 809.)

Opinion filed July 16, 1932.

*William Maloney,* for appellant.
*Jacobsen & Murray,* for respondent.

BIRDZELL, J.   This is an action to foreclose a chattel mortgage given to secure the defendant's note of $1,000 due December 1, 1929. The mortgage covered livestock and machinery owned by the defendant. In the complaint a second cause of action is stated for the foreclosure of a pledge of 12 shares of preferred stock in the plaintiff corporation for which the defendant subscribed at the time of making the original loan of which the note in suit is a renewal. In the trial court a judgment was entered for the defendant. The plaintiff appeals and demands a trial de novo.

In February, 1927, the defendant executed a written application for an agricultural loan directed to the plaintiff. The application was for a $1,500 loan to be paid December 1, 1927. It contained a description of the applicant's chattels to be mortgaged, together with a financial statement. The application contained this stipulation: "I further agree that The Agricultural Credit Corporation may withhold ten per

cent of the face of my loan as additional security for the repayment of this loan at its maturity. And in this connection, I further agree that if this loan is not paid promptly at maturity, or within fifteen days thereafter, that the ten per cent withheld from my loan may be used by The Agricultural Credit Corporation to reimburse it for expenses in looking after and making a collection of said loan; or in lieu thereof, I agree to accept your Guaranteed Six per cent Preferred stock redeemable at par plus accrued interest, at the option of said Agricultural Credit Corporation." Upon the application was indorsed a "Statement of Correspondent" covering the fact of possession by the applicant, the absence of incumbrances and judgment of fair and reasonable values, signed "Elgin State Bank, by A. B. Hageman, cashier." The loan was approved for $1,200. The proceeds of the loan were remitted to the Elgin State Bank with a statement showing deduction of interest in advance to the date of maturity, $62.10; 10 per cent stock subscription, $120; check for the net proceeds, $1,017.90. This was delivered to the defendant and at the time of delivery the defendant receipted for the 12 shares of preferred stock of the par value of $120. The receipt contains the following: ". . . the same is hereby returned to the said corporation to be by them held as security to my indebtedness in accordance with the provisions of my original application for a loan from that corporation."

Before the maturity of the first note the defendant executed another application for a renewal of the loan to the extent of $1,000. Upon this application was likewise indorsed a statement of correspondent signed by A. B. Hageman, cashier. This application contained the following:

"Subscription is hereby made for Six per cent Preferred Stock in said corporation in an amount equal to ten per cent of the face of my loan, redeemable at the option of the corporation at par plus accrued interest.

"It is agreed that my Membership or Stock shall at all times stand as collateral security for the payment of my indebtedness, including the necessary expenses incident to the collection of the same at maturity."

Pursuant to this application a renewal note for $1,000 was taken by the plaintiff due December 1, 1928, and when this note matured it was

renewed by another note of $1,000, the note in suit, due December 1, 1929. No written application preceded the last renewal, but a new mortgage was executed concurrently with and securing each note.

Prior to the maturity of the last note, or in November, 1929, the defendant attempted to discharge it and to satisfy the mortgage by paying $877, by surrendering the 12 shares of stock and asking for credit of $3 on account of interest unearned. A statement to this effect, remittance of a cashier's check and return of the stock receipt were made to the plaintiff by Hageman. This precipitated a lengthy correspondence, carried on principally by Hageman and the plaintiff but to some extent between the plaintiff and the defendant. In connection with this correspondence the cashier's check was transmitted between Hageman and the plaintiff a number of times. It was the consistent contention of the plaintiff that the loan could only be discharged by the payment of the full amount of $1,000 and that it was under no obligation to credit or redeem the stock. It was just as consistently urged by Hageman and by the defendant that the defendant was entitled to be credited with the par value of the stock upon the payment of the loan and surrender of the stock. Ultimately, however, under date of September 17, 1930, the plaintiff indorsed a credit of $877 on the note and stated a balance of $123. It thereupon instituted the present action.

To the complaint, which states a cause of action for the recovery of the balance together with interest owing and for foreclosure of the chattel mortgage and a separate cause of action for the foreclosure of the pledge of the stock to satisfy the same claim, the defendant answers alleging that the plaintiff at the time the loan was made, through its agent, represented to the defendant that when he would pay the loan there would be credited thereon by the plaintiff the face value of the stock, $120, and interest, and that such agent represented that conditions to that effect were embodied in the application; that the defendant relying thereon and believing such representations to be true executed the application; that the representations were false in that such stipulation was not incorporated in the application; that the defendant is a German and unable to read or write the English language; and that he relied upon the statements and representations of the plaintiff. It is also alleged that the consideration for the notes and mortgages has

failed to the extent of $120 with interest thereon. Accord and satisfaction and payment are also pleaded.

In addition to the demand for trial de novo, the plaintiff served with the notice of appeal specifications of error which on this appeal are grouped into eleven issues. In the view we take of the case, however, it is unnecessary to consider many of the issues so framed and presented. Obviously, if the defendant has established one good defense, it is immaterial whether or not other defenses are established. The vital question, as we see it, is whether or not the defendant has fulfilled his obligation to the plaintiff. In determining this question it is necessary incidentally to consider the relationship of the various parties to the transaction.

We are of the opinion that the evidence amply shows the Elgin State Bank to have acted as the agent of the plaintiff in taking the original application and that such bank acted through Hageman. The original application contains no statement whatever as to the designation of an agent to act for the applicant. The Elgin State Bank signs and indorses the application as "correspondent." As such correspondent it makes representations as to facts that are essential for the lender to know, facts which a lender would ordinarily ascertain from sources other than the borrower. Not only this,—it contains an expression of judgment as to the value of the property to be mortgaged. The second written application does contain an express appointment of the Elgin State Bank as the agent of the applicant for certain purposes in connection with the loan, but, in view of the first application and of the other circumstances in the instant case, this does not negative the fact that the bank might also have acted as the agent for the lender in soliciting the loan. There was no written application at the time of the second renewal and the testimony is principally concerned with the execution of the first application under which the stock was issued.

The defendant when called for cross-examination and asked whether or not Hageman was acting as his agent replied in the affirmative, but later when testifying in his own behalf he stated he did not understand that and that Hageman was acting for the plaintiff company. Hageman testified that he kept blank applications of the plaintiff company in the bank; that he had secured several loans from the plaintiff corporation; that "We have been getting pay for some of that work, but

I do not recall whether they paid for this particular case." We are of the opinion that the evidence amply warrants a finding that in procuring this application to be made .the Elgin State Bank was acting as agent for the plaintiff corporation.

As to the character of representations made at the time the application was taken, the defendant's testimony shows Hageman represented to him that if the loan was made he would be a shareholder to the extent of 10 per cent of the face of the loan and this would be kept out and that that amount would not have .to be paid by him when he paid up the loan. This testimony is corroborated by Hageman. It appears this was Hageman's explanation of the terms of the contract or application. The application is so worded that one reading it might readily infer the 10 per cent, whether withheld as cash or in the form of pledged guaranteed 6 per cent preferred·stock redeemable at par, was simply to serve as assurance that the loan would be repaid and as a fund to reimburse the plaintiff for expenses of collecting such particular loan. If the fund were withheld in cash and no expense incurred in collection, obviously, it would not have to be repaid by the borrower. To ascribe a different result where in lieu of retaining the cash the plaintiff issued stock which it retained as security, would be to attach significance to form rather than substance.

The contract or application was upon a form prepared by the plaintiff and it purported to be only an application for an agricultural loan. Its provisions with reference to the retention of 10 per cent of the loan, either in the form of cash or stock, when considered in connection with the entire application, may fairly be construed as limiting the business relations between the plaintiff and the applicant to the life of the loan. At any rate any ambiguity in that respect should be resolved against the plaintiff and where at the time of the application its own agent has placed a construction upon the contract favorable to the borrower in this respect, it should be bound by such construction.

The original application contains a statement indicating it was contemplated that the loan might be rediscounted with the Federal Intermediate Credit Bank of St. Paul. Under the terms of the Act of Congress, March 4, 1923, under which the federal intermediate credit banks were organized, such banks may discount for or purchase from .agricultural credit corporations notes or other obligations "the proceeds

of which have been advanced or used in the first instance for any agricultural purpose or for the raising, breeding, fattening, or marketing of livestock." USC title 12, chap. 8, § 1031. To the extent that the proceeds of such loan might have been used for the purchase of stock as a part of the permanent capital of a private corporation engaged in the loaning business it would, of course, not have been used in the first instance for any agricultural purpose. The act of Congress referred to, which was in contemplation when the application in question was taken, nowhere authorizes the purchase or discount of paper given to finance agricultural credit corporations as private corporations. The act differs in this respect from the Act of July 17, 1916, relating to the capital stock of federal farm loan banks and federal farm loan associations which are co-operative. See USC title 12, chap. 7, §§ 721 and 733. It was this latter act that was involved in the case of Byrne v. Federal Land Bank, 61 N. D. 265, 237 N. W. 797. These observations lend further countenance to the construction placed upon the application by the lender's agent at the time it was signed by the borrower and point to the legal conclusion that the retention, whether in the form of cash or of stock, was intended only as further security for the repayment of the loan and not as an investment of a sum by the borrower to be hazarded permanently in the business of the lender. Consistent with this conclusion the borrower who repays what he had received upon his loan according to the contract is entitled to the cancellation of the security given therefor. We are of the opinion that the evidence shows a construction of the contract to have been made to the above effect, binding upon the plaintiff, at the time the application was taken. The record shows the obligations of the borrower (the defendant) under this contract, as so construed, to have been fully performed.

One of the officers of the plaintiff corporation, testifying as a witness, maintained that the corporation could not accept the stock from the defendant because "they could not buy their own stock." If anything is proved by this, too much is proved. If they labored under such difficulty at the time of the repayment of the loan, the same limitation upon their power would doubtless have prevented them from loaning money to others for the sole purpose of buying the corporate stock in

the first instance. This would be to do indirectly what this officer says the corporation could not do directly.

The judgment appealed from is affirmed.

CHRISTIANSON, Ch., J., and BURKE, BURR and NUESSLE, JJ., concur.