## LANGEVER v. DOYLE.

No. 12564.

Court of Civil Appeals of Texas. Fort Worth.

Nov. 21, 1931.

Rehearing Denied Dec. 19, 1931.

Chas. T. Rowland, of Fort Worth, for appellant.

M. B. Harris, Sr., and B. F. Bouldin, both of Fort Worth, for appellee.

CONNER, C. J.

Appellant J. J. Langever instituted this suit against appellee D. M. Doyle upon a promissory note, dated January 7, 1928, for the principal sum of $360, payable to the order of Langever six months after date, and

providing for interest from December 1, 1928, at the rate of 6 per cent. per annum and for the additional 10 per cent. for attorney fees if sued on, etc. Doyle defended on the ground that the note was without consideration. The trial, which was before the court without a jury, resulted in a judgment for defendant, and Langever has appealed. The trial court's findings of fact and conclusions of law support the plea of defendant Doyle.

The facts are practically undisputed, and are substantially as follows: Doyle was a candidate for sheriff of Tarrant county during 1928, and had submitted his name to the electors during the primary election of that year. A number of his friends concluded that it would be advantageous to procure some political advertising in Doyle's favor, and with that purpose in mind, in June, 1928, Doyle and W. C. Pool and C. C. Mitchell, two of his friends, visited Langever, who was in the advertising business, for the purpose of securing a contract placing political matter on the "city's waste paper baskets," carrying a cut or picture of Doyle as candidate for sheriff. Langever agreed to furnish the advertising matter as requested for $400. He was at the time, however, informed by Doyle that he, Doyle, could not contract for the space nor pay for the advertising, for the reason that the law limited the amount he could expend in his canvass for the office of sheriff, and that he had already expended during his race all that the law permitted him to expend except some $30 or $40 that he would need for his personal expenses thereafter. It was stated to Langever, however, that Doyle's friends desired the advertising, and that they wanted to make a trade with Langever, which Doyle himself could not do, and the contract was closed with the understanding that the payment would be made with contributions made by Mr. Doyle's friends; Mr. Pool stating at the time that he would contribute $10 and Mr. Langever himself subscribed $10 to the fund, he at the time fully understanding that the advertisement was to be paid for by contributions as suggested.

There was only $40 paid on the total sum of $400 for the advertising, thus leaving $360 of the contract price of the advertising unpaid at the conclusion of the primary election. Several months thereafter, Doyle executed the note sued on, which he sent to Langever's attorney, who at the time refused to accept it unless also signed by Pool and Mitchell. Neither Mr. Pool nor Mr. Mitchell would sign, and Doyle alone was sued upon the note, as stated in the beginning.

█ It is not pretended that Doyle obligated himself to pay for any part of the advertising at the time the contract therefor was entered into, nor is it pretended that between the dates of the contract for the advertising and the execution of the note any new service was performed by appellant or any additional promise given by appellee Doyle which could or would constitute a sufficient consideration to support the note. Of course, as is urged in behalf of appellant, article 5933 (Rev. St.), sections 24 and 25 of our Negotiable Instruments Act, provides that every negotiable instrument is deemed "prima facie to have been issued for a valuable consideration." And this of course has no application in cases where, as here, the issue of a failure of consideration is duly pleaded and presented by the evidence. It is also true by section 25 of the article that an antecedent or pre-existing debt constitutes value, and is a sufficient consideration to support a promise to pay. And it may be further true that a note executed in compromise of a disputed claim made in good faith may be supported by a sufficient consideration, as held in the case of Citizens' Garage Co. v. Wilson (Tex. Civ. App.) 252 S. W. 186, cited by appellant.

█ But in Texas Jurisprudence, vol. 10, page 26, § 12, it is said: "One of the essential elements of a contract is the voluntary assent of the parties thereto; * * * The consent must be free and voluntary, and mutual; and each of the parties must communicate his assent to the other, so that both may know that their minds have met."

█ The following § (13) further says: "To constitute a contract the minds of the parties must meet with respect to the subject matter of the agreement, and as to all of its essential terms; and all of them must assent to the same thing in the same sense at the same time. Their assent must comprehend the whole proposition, and the agreement must comprise all the terms which they intend to introduce into it."

It is quite clear that appellee Doyle did not agree or in any enforceable manner or form promise to pay for the advertising service performed by appellant. As the evidence without dispute shows, appellant at the time of the contract for the advertising was distinctly told by appellee Doyle that he himself would be unable to pay the price charged or to obligate himself to pay the same. The fact stated by him, which is not disputed in the evidence, that Doyle had already spent the amount he could lawfully spend precluded any legal agreement on Doyle's part to pay for the contemplated service, for it is distinctly provided in our law, see article 3170, Rev. Civ. Statutes of 1925, limiting the expenditures of candidates for office in this state, that:

"The expenditure of any money or the giving, paying or promising to give or pay any money or anything of value, directly or indirectly by any candidate for nomination or by any campaign manager or assistant campaign manager or any authorized clerk or other employee of such campaign manager or assistant campaign manager, in furthering

or opposing the candidacy of any person for nomination in a primary election, except in the manner and for the purposes authorized by the provisions of this article is expressly prohibited, and the total amount expended and authorized for these purposes and for any and all purposes connected with furthering or opposing the candidacy of any person for a nomination to be determined by a primary election by any candidate or campaign manager, shall not exceed the following amounts for each candidate for each of the following offices to-wit: * * *

For county officers in counties having a population of 50,000 or more .......................... $750.00
For county officers in counties having a population of 30,000 or more, and less than 50,000.... 500.00
For county officers in counties having a population of less than 30,000 ........................ 300.00"

Article 264 of our Penal Code provides, so far as necessary to quote, that "Any candidate for any nomination for a State, county, district or precinct office, to be determined by a primary election held under the laws of this State, or any campaign manager for such candidate, who shall himself, or by or through any other person or persons, or on behalf of any other person or persons, directly or indirectly, give, pay or expend any money, or pay or give anything of value, or promise to give, pay or expend any money or to pay or to give anything of value, or authorize any expenditure or assume any pecuniary liability in furthering or opposing the candidacy of any person for any nomination to be determined by such primary election, except for the purposes provided for by the laws of this State governing such primary elections * * * shall be fined not exceeding one thousand dollars, or confined in jail for not more than one year, or both, or be confined in the penitentiary for not less than one nor more than five years."

■ Furthermore, the authorities support the statements of law to be found in Texas Jurisprudence, vol. 10, page 183, § 106, et seq. It is said in section 106 that "A contract is illegal where it is made in violation of the constitution, or of a statute or ordinance, or where its performance will result in such violation, or where it is contrary to public policy, or where a part of the agreement is to use the subject matter of the contract, or a part of it for an unlawful purpose."

Section 107 reads: "A contract cannot impair the validity or force of any law, nor control or limit the provisions of a statute. As a general rule, therefore, a contract made in violation of the constitution, or an express statute, or an ordinance, or the performance of which will result in such violation, is void and unenforceable, without regard to the question of moral turpitude."

Section 160, page 233, of the same authority says: "As between the parties to the transaction, no one of them can recover for any thing done or promised in carrying out the illegal enterprise. An unlawful contract cannot form the basis of any enforceable legal or equitable rights, or impose any legal obligations upon the parties to it."

■ We think therefore that the fact that Doyle may have received the benefits of the advertising performed by appellant, and the further fact that he thereafter executed his note, impelled by a sense of natural justice or otherwise, will not support the promise to pay evidenced by the note upon which this suit is founded.

In Page on Contracts, vol. 2, § 1040, it is in part said: "Modification or abandonment of an illegal contract by mutual agreement can not be a lawful consideration for a new contract based on such original contract, even if there is some additional law consideration, as long as the new contract is in any way based upon the subject matter which originally made such contract illegal. So dismissal of an action on an illegal contract is no lawful consideration for a promise based thereon. So an express promise intended to discharge liability growing out of a wager contract in whole or in part is unenforceable."

In Seeligson v. Lewis & Williams, 65 Tex. 216, 57 Am. Rep. 593, it is said, quoting from the headnotes: "A promissory note given for a debt arising, in whole or in part, out of an illegal transaction, is, as between the parties, void for want of consideration." See, also, Shelton v. Marshall, 16 Tex. 344.

To uphold the validity of the note under consideration, as appellant insists, would be to violate the principles enunciated in the authorities from which we have quoted and would enable candidates in a primary election to violate the public policy of our election laws as expressed in the prohibitory terms we have quoted, and we do not feel that we can lend our aid for the accomplishment of any such purpose.

It is accordingly ordered that the trial court's findings of fact and conclusions of law be adopted, and the judgment affirmed.