850

## SMELTZER et ux. v. McCRORY et al.

### No. 4685.

Court of Civil Appeals of Texas. Amarillo.

Jan. 18, 1937.

Rehearing Denied Feb. 8, 1937.

Art Schlofman, of Dalhart, and Taylor, Muse & Taylor, of Wichita Falls, for appellants.

B. N. Richards, of Dalhart, and Adkins, Pipkin, Madden & Keffer, of Amarillo, for appellees.

HALL, Chief Justice.

George E. Smeltzer and wife sued Lon C. McCrory and W. H. Latham to cancel two second lien notes, together with deeds of trust upon certain lands described in the petition.

. In 1928 or 1929 the plaintiffs, Smeltzer and wife, purchased the lands involved in this suit, and as consideration therefor assumed an indebtedness of $10,000 then against the land in favor of the San Antonio Joint Stock Land Bank, and in addition thereto executed in favor of the de-

fendants certain vendor's lien notes to represent the balance of the purchase price.

In 1934, and when the major portion of the indebtedness against the land was still outstanding, plaintiffs commenced negotiations for a loan from the Federal Land Bank of Houston, which was finally consummated in the sum of $15,500. In order to secure the loan it was necessary that certain judgment liens against plaintiffs' land be removed from the record, and defendants claimed that they paid out of their own money in removing said liens the sum of $714.

The defendants assert that prior to the time the Federal Land Bank loan was consummated, but at a time when the parties had reason to believe that said loan of $15,500 would be made, they, the defendants, estimated the amount of the proceeds of the loan which could be applied on the indebtedness due from plaintiffs to them, and discovered that there would be an insufficient balance to pay off the original vendor's lien notes which they held, together with the sums they had advanced to satisfy the judgment liens, and they made up new notes, representing this difference, after deducting all interest, one note being payable to each of the defendants, and each note bearing voluntary credits of several hundred dollars, which notes, together with deeds of trust upon the lands involved securing the same, were executed on April 24, 1934. That on the following day defendants assigned and delivered to the Federal Land Bank the original vendor's lien notes which they held, and the assignment contains this recital: "Any and all portions of said above described notes which is not hereby assigned has been fully paid and the lien securing the payment thereof is hereby released."

The notes executed by plaintiffs on April 24, 1934, as well as the deeds of trust securing the same, were subsequently renewed February 4, 1934, though there is some discrepancy in the date of the notes. They bear date of January 19, 1935. These renewed notes and the deeds of trust are the instruments which the plaintiffs attack by this suit and seek to cancel.

The foregoing facts are alleged by plaintiffs, who also allege the execution by them of notes aggregating the sum of $15,500 on February 26, 1934, secured by a first lien on the property by deed of trust of that date, and they further allege that prior to such date the defendants were the owners of original outstanding second lien notes against said property secured by liens which they transferred to the Federal Land Bank and Land Bank Commissioner by transfer and assignment dated February 27, 1934, which assignment contained the above quoted recital. That notwithstanding the execution and delivery of such assignment and release, the defendants represented to plaintiffs, on or about April 24, 1934, that the plaintiffs were still indebted to defendants, and induced the plaintiffs to execute and deliver to them second lien notes in the sum of $1,327.29 and $1,113.25 respectively, being credited with $431.12 and $361.42 respectively, and defendants further induced plaintiffs to execute and deliver to them deeds of trust on the property involved to secure the same, but did not place such deeds of trust of record. That at the time of the execution of said notes plaintiffs did not know that the indebtedness due the defendants, in addition to what had been transferred to the Federal Land Bank of Houston and Land Bank Commissioner, had beeen released by defendants.

Plaintiffs further allege that on or about February 4, 1935, they had an opportunity to sell a quarter section out of the above described land, and went to the office of the defendants to prepare a contract, and were informed that it would be necessary for plaintiffs to renew the notes and liens of April 24, 1934, before plaintiffs would be permitted to make such sale, and plaintiffs were induced thereby, on February 4, 1935, to execute and deliver renewal notes in favor of the defendants without the credits specified above, and to execute and deliver the deed of trust securing the same.

Plaintiffs further allege that there was no consideration for the execution and delivery of the original notes in favor of the defendants dated April 24, 1934, nor for the renewal notes dated February 4, 1935, and that the plaintiffs did not know that the indebtedness represented in said notes had been released when they executed the original and the renewal notes, and that the action of the defendants and representations made were fraudulent as against plaintiffs, the Federal Land Bank of Houston and the Land Bank Commissioner; that defendants represented that the notes must be executed or they would have to file suit to collect the indebtedness which existed, which representations were false and fraudulent and constituted duress. That said second notes and deed of trust cast a cloud upon the title of plaintiffs' property,

and prevented the sale of a quarter section of same, to plaintiffs' damage in the sum of $1,700.

The prayer is for cancellation of the notes and the deeds of trust securing the same, and for damages.

In addition to general demurrer and special exceptions and general denial, defendants pleaded estoppel, alleging that the plaintiffs requested them to execute the transfer and assignment to the Federal Land Bank of Houston, and to reduce their indebtedness. Defendants also pleaded that they aided the plaintiffs in securing the loan from the Federal Land Bank of Houston and the Land Bank Commissioner to retire the indebtedness due by plaintiffs, including the first lien due the Joint Stock Land Bank of San Antonio in the sum of $10,000, and a portion of the indebtedness due defendants, who paid certain judgments and expenses in order to aid plaintiffs in closing the loan with the Federal Land Bank of Houston and the Land Bank Commissioner.

Defendants admitted that they secured from the plaintiffs the renewal notes dated February 4, 1935, without charging interest on such notes, and did reincorporate in such notes the credits that had been placed on the original notes; that the prospective purchaser of a portion of said land had moved upon it, made valuable improvements thereon, and was willing to close the deal for the purchase thereof. They denied that there was any fraud or duress practiced on the plaintiffs.

At the conclusion of the testimony the court directed the jury to return a verdict in favor of the defendants. Judgment was entered upon said verdict.

Appellants' brief contains ten assignments of error, copied on the last four pages thereof. The brief contains no propositions, but the assignments are in the form of propositions. Following the statement of the nature and result of the suit, appellants failed to copy the assignments, but instead thereof we find "Statement, argument and authorities under Assignments of Error Nos. 1, 2, 3, 6 and 7."

This is a violation of the rules of briefing, but since the assignments referred to challenge upon several grounds the action of the court in directing a verdict, the assignments will be considered, notwithstanding the fact that appellees insist that the assignments are insufficient, to which we do not assent, and further insist that they do not present fundamental error.

The first assignment is: "The trial court erred in instructing the jury to return a verdict in favor of the defendants and against the plaintiffs on that part of the cause of action of the plaintiffs seeking to cancel the notes in question and the deed of trust securing the same, and in granting judgment in favor of the defendants on that part of the cause of action of the plaintiffs, for the reason that the undisputed evidence showed that there was no consideration for the execution and delivery of said notes and the deed of trust lien securing the same."

The next assignment insists that the court erred in instructing a verdict because the evidence showed the defendants had consented in writing to accept bonds and cash from the Federal Land Bank of Houston and the Land Bank Commissioner in full settlement of the debt due them by the plaintiffs.

As the third error committed by the court, the plaintiffs in error assert that the defendants had consented to accept the bonds and cash from the Federal Land Bank of Houston and the Land Bank Commissioner in full settlement of the debt due them by plaintiffs, and had transferred and assigned all of said debt, and the lien securing the same, to the Federal Land Bank of Houston and the Land Bank Commissioner, and had expressly released all of said indebtedness not so transferred and assigned, and had recited that the same had been fully paid, which constituted an accord and satisfaction of that part of such indebtedness not paid by the Federal Land Bank of Houston and the Land Bank Commissioner.

By the sixth assignment the plaintiffs in error assert that the court erred in not instructing a verdict in their favor canceling the notes and liens because there was a complete accord and satisfaction of the indebtedness due the defendants who had agreed to accept in settlement of their indebtedness due the defendants by plaintiffs bonds of the Federal Land Bank, and had fully released all indebtedness which had not been transferred to said Bank and Bank Commissioner, and had transferred all of their liens to the Federal Land Bank of Houston and the Bank Commissioner, all of which was fully authorized by plaintiffs by the execution and delivery by plaintiffs to said Bank and Commissioner of a deed of trust conveying the same security theretofore held by the defendants to se-

cure the new indebtedness in favor of said Bank and Commissioner.

By the seventh assignment it is asserted that there was no consideration for the execution and delivery of said notes and deed of trust.

It will be seen that these assignments undertake to state the reasons why the court erred in peremptorily instructing the jury to find for the defendants. The defendants in error contend that this court cannot consider the assignments because in order to do so we are required to review the entire statement of facts, and because the assignments challenging the action of the court in directing a verdict do not present fundamental error.

In Hovey v. Sanders, 174 S.W. 1025, 1026, we said: "This court has uniformly held that the giving or refusing of a peremptory instruction is fundamental error, which it is the duty of this court to consider, even without an assignment of error. * * * Owens et al. v. Corsicana Petroleum Co. [Tex.Civ.App.] 169 S.W. 192; Henderson & Grant v. Gilbert [Tex.Civ.App.] 171 S.W. 304; Neville v. Miller [Tex.Civ.App.] 171 S.W. 1109.

While it must be admitted that there is some conflict between the Courts of Civil Appeals upon this question, we are convinced that the majority of the decisions, including the Supreme Court, agree with our holding. In the instant case the parties have quoted liberally from the statement of facts, setting out the evidence which they insist sustain their respective contentions. Notwithstanding the conflict, we believe the rule is that the error of the trial court in giving or refusing a peremptory instruction is fundamental error. Lockney Farmers' Co-op. Society v. Egan (Tex.Civ.App.) 275 S.W. 732, affirmed (Tex.Com.App.) 284 S.W. 937; Gaines v. First State Bank (Tex.Civ.App.) 28 S.W. (2d) 297, affirmed 121 Tex. 559, 50 S.W. (2d) 774; Harlan v. Acme Sanitary Flooring Co. (Tex.Com.App.) 231 S.W. 348; Warren v. Houston Oil Co. (Tex.Com.App.) 6 S.W.(2d) 341, affirming (Tex.Civ.App.) 296 S.W. 637; Harper v. Dodd, 30 Tex.Civ.App. 287, 70 S.W. 223; Harlington Land & Water Co. v. Houston Motor Car Co. (Tex.Com.App.) 209 S.W. 145; Palm v. Nunn (Tex.Civ.App.) 203 S.W. 1124 (writ refused); Rowe v. Colorado & S. Ry. Co. (Tex.Civ.App.) 205 S.W. 731 (writ refused).

The appellants contend that when the defendants assigned their notes to the bank, reciting in the assignment that all of the notes not included in the assignment had been fully paid and the lien securing the payment thereof was thereby released, that it constituted an accord and satisfaction.

We cannot assent to this proposition. One of the elements of accord and satisfaction is that there must be the mutual assent of the parties. As stated in 1 C.J.S. 468, Accord and Satisfaction § 3:

"An accord is in essence a contract or agreement, and accord and satisfaction is founded, and dependent on, and results from, a contract, express or implied, between the parties, and occurs only where the parties intend it and mutually assent to it.

"The essentials of valid contracts in general must be present in a contract of accord and satisfaction; there must be proper subject matter, competent parties, an aggregatio mentium, or meeting of the minds of the parties, and, a proper consideration. The contract must embody a definite offer of settlement, and an unconditional acceptance of such offer according to its terms; and it must finally and definitely close the matter covered by it, so that nothing of or pertaining to that matter is left unsettled, or open to further question or arrangement. The act or acts to be done under the contract must be specified with as much certainty as in any other agreement."

In the same authority, page 476, it is said: "To constitute a valid accord and satisfaction, it is essential that what is agreed to be given or performed shall be offered as a satisfaction and extinction of the original claim or demand, that is, that the debtor shall intend it as a satisfaction of such demand, and that such intention shall be made known to the creditor in some unmistakable manner, or that the offer be made in such wise or be accompanied by such acts and declarations as to amount to a condition that if the thing offered is accepted, it is accepted in satisfaction, and such that therefrom the creditor is bound to know or understand such intention and to recognize the existence of such attached condition; and it is equally essential that the creditor shall accept the thing given or agreed with the intention that it shall operate, in accordance with the debtor's intention, as a satisfaction. Both the giving and the acceptance in satisfaction are thus

essential requisites, and if either be lacking there can be no accord and satisfaction."

Of course, plaintiffs in error cannot contend that the assignment of the notes constituted an accord and satisfaction because they assert again and again that the transaction was without their knowledge; that in fact they did not know that the original notes and liens securing them had been released until after they had renewed the two notes. Under such circumstances, the element of intention is absent, as is also the element of assent. The testimony of the defendants is that they took the renewal notes and mortgages securing same on the 24th day of April, one day before plaintiffs executed their note for $15,500, and the execution of the assignment was in order to apparently reduce the amount of the plaintiffs' prior indebtedness because the Bank and the Commissioner refused to consummate the loan contract with any prior liens against the property. Their purpose, as stated by them, was to get plaintiffs' obligations covering the balance due on the notes which they had transferred and the several sums of money which they had expended in satisfying the judgment liens, taxes, expenses, etc. Their testimony is uncontradicted. It cannot, therefore, be contended that they had any intention of effecting an accord and satisfaction, or that in transferring their notes they intended to cancel all indebtedness due them from the plaintiffs.

■ They further contend that the federal courts and other courts held that an accord and satisfaction may result when the payment is made by a third party. The record fails to disclose that any third party made any payments for the plaintiffs. It does appear that the money obtained from the Federal Land Bank of Houston was apportioned by said Bank and its representative, Ashby, among the several creditors of plaintiffs, and that all of the borrowed fund was exhausted in this way, but this does not constitute a payment by a third party because when the $15,500 note and the mortgage liens to secure the same were accepted, the money became at once the property of plaintiffs, and while it seems that the Bank and Ashby paid it upon plaintiffs' indebtedness, they must be held to be the agents of plaintiffs in so doing.

From what has been said, it is clear that there is no issue of accord and satisfaction in the case. See, also, 1 Tex.Jur., 251 § 7.

■ That there was a sufficient consideration for the two notes executed by plaintiffs in error on April 24th seems to be settled. The notes included the balance on the original notes which was left unpaid because of a deficiency in the amount of the loan after paying off other debts, and the uncontradicted evidence shows that $700, which the defendants had expended in satisfying judgments and other indebtedness paid by them, aggregated the amount for which the two notes were given.

The next question to be considered is the contention that the contract which resulted in the execution of the two notes and mortgages securing the same was void because it violated the United States statute, Act May 12, 1933, § 35 (12 U.S.C.A. § 1019), which is a part of subchapter 2 of the Act of Congress relating to loans to farmers by the Land Bank Commissioner. The section is: "Any person who shall knowingly make any material false representation for the purpose of obtaining any loan under this subchapter of this title, or in assisting in obtaining any such loan, shall, upon conviction thereof, be fined not more than $1,000, or imprisoned not more than six months, or both."

■ The contention that the act of defendants in assigning their original notes to the Land Bank in order to reduce the indebtedness, where the Banking Commissioner would grant the loan, thereby assisting the plaintiffs, must be sustained. As stated above, in making the assignment, they represented that "Any and all portions of said above described notes which is not hereby assigned has been fully paid and the lien securing the payment thereof is hereby released." That they have violated the statute is too clear to require discussion.

A similar provision exists in the Home Owners' Loan Corporation statute, and the New York court decided that an agreement, similar in all respects to the one in this case, rendered the contract void. Jessewich v. Abbene, 154 Misc. 768, 277 N.Y. S. 599, 600. That act provided: "No loan will be made where a separate understanding or agreement, calling for any payments other than those required by the corporation, is made between the debtor and the holder of the mortgage." The court says that the statute makes the Home Owners' Loan Corporation "strictly a relief agency to save homes from threatened or pending foreclosures, to save lifetime savings investments of home owners in distress, to save them from becoming paupers, and is the rehabilitating agency to guard and pro-

tect the small home owner by judiciously refinancing his obligations with enough to pay all the encumbrances on his home," etc.

The court further says that collusive agreement between creditor and home owner creating on the owner's occupied home encumbrances too heavy and terms too severe for the home owner to work out his problem would easily defeat the very purpose of this act, interfere with trickery of this corporation collecting its bonds, and the government's financial assistance would merely delay the inevitable foreclosure suit which it meant to prevent, and the court declared the secret contract to pay the balance of $700 upon the original statute void, as being in violation of the statute and in fraud of law. We think this case is decisive of the question. Moreover, it is in accord with the great weight of authority relating to illegal contracts made in violation of the statute.

In 13 C.J. 420, § 351, it is said: "Where a statute expressly declares that certain kinds of contracts shall be void, there is then no doubt of the legislative intention, and an agreement of the kind voided by statute is unlawful. The same is true where the contract is in violation of a statute, although not therein expressly declared to be void. It is immaterial whether the thing forbidden is malum in se or merely malum prohibitum. A statute prohibiting the making of contracts, except in a certain manner, ipso facto makes them void if made in any other way."

In section 352, Id., it is said: "Frequently a statute imposes a penalty on the doing of an act without either prohibiting it or expressly declaring it illegal or void. In cases of this kind the decisions of the courts are not in harmony. The generally announced rule is that an agreement founded on or for the doing of such penalized act is void. In accordance with the view of Lord Holt in an old case: 'Every contract made for or about any matter or thing which is prohibited and made unlawful by any statute, is a void contract, tho' the statute itself doth not mention that shall be so, but only inflicts a penalty on the offender, because a penalty implies a prohibition, tho' there are no prohibitory words in the statute.' "

In 10 Tex.Jur. 183, § 106, it is said: "A contract is illegal where it is made in violation of the constitution, or of a statute or ordinance, or where its performance will result in such violation, or where it is contrary to public policy, or where a part of the agreement is to use the subject matter of the contract, or a part of it, for an unlawful purpose."

In section 107, Id., it is said: "A contract cannot impair the validity, or force of any law, nor control or limit the provisions of a statute. As a general rule, therefore, a contract made in violation of the constitution, or of an express statute, or of an ordinance, or the performance of which will result in such violation, is void and unenforceable, without regard to the question of moral turpitude, and whether the parties knew the law or not."

In section 108, Id., it is said: "A contract in violation of the statute is void if the purpose of the legislature was to protect the public from fraud in contracts, or to promote some object of public policy," citing Republic Trust Co. v. Taylor (Tex. Civ.App.) 184 S.W. 772.

In Williston on Contracts, vol. 3, § 1763, (First Edition) the author says: "There can be no doubt that if a statute directly prohibits a contract or sale it cannot be enforced by the parties to it, and the imposition of a penalty is at least prima facie an implied prohibition of the transaction to which the penalty attaches; but though no penalty is imposed, the transaction may nevertheless be invalidated."

In the note he quotes from Norbeck & N. Co. v. State, 32 S.D. 189, 142 N.W. 847, 849, Ann.Cas.1916A, 229, as follows: "A contract founded on a statute making an act penal is void, although the statute does not pronounce it void or expressly prohibit it."

He further quotes from Moog v. Hannon's Adm'r, 93 Ala. 503, 9 So. 596, as follows: "And a contract which in its execution contravenes the policy and spirit of a statute is equally void as if made against the positive provisions." ·

2 Page on Contracts, § 681, after stating the rule that the legislative intent should direct the courts in determining this question, if such intent can be ascertained, says:

"While a number of arbitrary tests have been suggested for the purpose of aiding the courts in determining the intention of the legislature, these tests are at best merely prima facie rules for determining the legislative intent, and in any given case they must yield wherever the legislative intent can be deduced from the statute taken as a whole. The most frequent methods by which the legislature attempts

to make a given subject-matter illegal or void without specifically declaring that the contract shall be illegal or void, are: (1) by making the act in question a crime; (2) by forbidding the act specifically; (3) by imposing a penalty upon the performance of the act without making it a crime, and (4) by requiring license, inspection, and the like.

"If the legislature has made the performance of a given act a crime, a contract to perform such act is illegal."

Texas seems to have adopted this rule. Read v. Smith, 60 Tex. 379; American Nat. Ins. Co. v. Tabor, 111 Tex. 155, 230 S. W. 397; Heirs of Hunt v. Heirs of Robinson, 1 Tex. 748; Sun Mut. Ins. Co. v. Holland, 2 Willson, Civ.Cas.Ct.App. §§ 443, 448; R.S. art. 1536, as amended 42d Leg., 1931, p. 264, c. 158, § 1 (Vernon's Ann.Civ. St. art. 1536).

Section 682, Page on Contracts, says: "The act in question may be forbidden by the written law, either expressly or impliedly. Contracts to perform such acts will be unenforceable," citing numerous cases, among them St. Louis S. W. Ry. Co. v. Williams (Tex.Civ.App.) 32 S.W. 225.

6 Ruling Case Law 701, § 107, states the rule thus: "A contract directly and explicitly prohibited by a constitutional statute in unmistakable language is absolutely void. That has never been judicially doubted, and is unanimously conceded. To hold such a contract binding would be to enforce that which the Legislature has forbidden, to give effect to that which the Legislature has declared void—the repeal of a law by judicial construction. However, it is not necessary that there should be an express prohibition in a statute to render void a contract made in violation of it. It makes no difference whether the prohibition or command is expressed or implied. Even where the statute does not, in express terms, declare the act unlawful, yet if it appears, from a consideration of the terms of the legislation in question that the legislative intent was to declare the act unlawful, no contract involving the doing of such an act can be enforced. In other words, the inquiry is as to the legislative intent, and that may be found not only in the express terms of the statute, but also may be implied from the several provisions thereof. So a contract will not be enforced where it conflicts with the general policy and spirit of the statute which governs it, although there may be no literal conflict."

Section 108, Id., states: "In order that there may be an implied prohibition, the imposition of a penalty is not essential. In other words, it is not necessary that a statute should impose a penalty for doing or omitting to do something in order to make void a contract which is opposed to its operation. The obverse of this proposition is, however, the basis of a well established rule, which dates at least from the time of Lord Holt. The rule, as stated in the early decisions, is that every contract made by or about a matter or thing which is prohibited and made unlawful by any statute, is a void contract, though the statute itself doth not mention that it shall be so, but only inflicts a penalty on the offender, because a penalty implies a prohibition though there are no prohibitory words in the statute. Although it might perhaps not warrant the conclusion that a penalty implies a prohibition for the purpose of making the offense punishable by indictment in case the law had prescribed another and a specific punishment for the offense, Lord Holt's remark is an authority for the proposition that a contract made in direct violation of a statute providing a penalty for the violation thereof is illegal though the contract is not in express terms prohibited or pronounced void."

.We have read practically all of the cases in Texas bearing upon this question, and while there is a want of uniformity, we find that the following, being the greater part of the cases passing upon the question, are in accord with the authorities from which we have just quoted.

Texas Employers' Ins. Ass'n v. Tabor (Tex.Civ.App.) 274 S.W. 309, affirmed in (Tex.Com.App.) 283 S.W. 779, announces the rule that a contract which cannot be performed without violation of law is void whether the parties knew the law or not. Langever v. Doyle (Tex.Civ. App.) 44 S.W.(2d) 1050; First Nat. Bank v. Neel (Tex.Civ.App.) 10 S.W.(2d) 408; Hennessy v. Automobile Owners' Ins. Ass'n (Tex.Com.App.) 282 S.W. 791, 46 A.L. R. 521; Ferguson v. Mounts (Tex.Civ. App.) 281 S.W. 616; Paragon Oil Syndicate v. Rhoades Drilling Co., 115 Tex. 149, 277 S.W. 1036; Miller v. Babb (Tex.Com. App.) 263 S.W. 253; Featherston v. Boxberger (Tex.Civ.App.) 255 S.W. 998; San Antonio Irrigation Co. v. Deutschmann, 102 Tex. 201, 105 S.W. 486, 114 S.W. 1174; Chimene v. Pennington, 34 Tex.Civ.App. 424, 79 S.W. 63; Read v. Smith, 60 Tex. 379.

While the record does not show that the plaintiffs executed the last two notes under duress, as that term is defined and understood, their testimony is that they signed the notes in order to avoid a foreclosure, which, in our opinion, was such an exercise of undue influence as to relieve the appellants of the charge of being in pari delicto. 2 Page on Contracts, §§ 1094–1096.

It is unnecessary to consider the remaining assignments. Because we think the contract is void, the plaintiffs were entitled to relief.

For the reasons stated, the judgment is reversed and is here rendered, canceling the notes and mortgages involved in the suit.