INTERNATIONAL HARVESTER COMPANY v. YOUNG.

1. Contracts—Application of Doctrine of Public Policy.
   Fact that the application of the doctrine of public policy may benefit an individual in a particular instance does not render it supine.

2. Same—Public Policy—Compromise of Debts—Federal Loans.
   Purpose of a Federal land bank and land bank commissioner's loan is to enable persons in debt, and without ability to make payment, to constitute the Federal agency the sole creditor and thereby eliminate, by way of compromise, all other creditors.

3. SAME—EVASION OF PUBLIC POLICY—FEDERAL LOAN—COMPROMISE
OF DEBTS—REPLEVIN.

Instruments consisting of bill of sale of farm implements, exe-
cuted by owner who was indebted to plaintiff, bill of sale
thereof to defendants, original owner's sons, who in turn gave
note and chattel mortgage to plaintiff, which were executed
before loan from Federal land bank and land bank commis-
sioner was consummated and delivered on day loan was dis-
tributed and made in order to evade, in part, the amount
plaintiff had reduced original owner's debt to it after partici-
pating in the proceeds of such loan *held*, void as against
public policy; hence there may be no recovery in action of
replevin against victims who became parties thereto at request
of plaintiff and in aid of financially distressed debtor.

Appeal from Lapeer; McCormick (James L.), J.
Submitted January 11, 1939. (Docket No. 14, Cal-
endar No. 40,288.) Decided April 4, 1939.

Replevin by International Harvester Company of
America, a Wisconsin corporation, to obtain from
Louis Young, Arthur Young, Russell Young, and
Harold Young certain farm goods and chattels.
Judgment for defendants. Plaintiff appeals. Af-
firmed.

*Cook & Cook,* for plaintiff.

*John F. Jordan,* for defendants.

WIEST, J. Earl R. Young, father of defendants,
was indebted to plaintiff in the sum of about $2,800,
evidenced by his notes, with interest thereon, and
secured by a chattel mortgage upon his farm imple-
ments and live stock. His farm was mortgaged and
his total indebtedness amounted to about $13,500.
He applied for a Federal loan with which to meet
his indebtedness. When it was apparent that a Fed-
eral loan might be obtained but in an amount in-
sufficient to meet his obligations and that if and when

made by the Federal Land Bank of St. Paul for itself and/or as agent for the land bank commissioner and the Federal Farm Mortgage Corporation, the creditors would be required to scale their claims to come within a loan of $7,500, plaintiff, being aware of the terms of the loan, if and when made, and the purpose thereof, in an endeavor to circumvent in part the purpose, procured from Earl R. Young a bill of sale of the farm implements, covered by chattel mortgage, and ostensibly sold the same to defendants under an installment contract, and defendants executed a note for $900, and a chattel mortgage on the implements. These instruments were executed and placed in a sealed envelope to be held by Earl R. Young until the loan by the bank was sent on and then to be delivered to plaintiff. When the loan was sent on and ready to be apportioned among the creditors, the mentioned papers held in escrow were delivered to plaintiff by Earl R. Young and thereupon plaintiff, through its agent, in ostensible compliance with the requirement that distribution of the fund should take care of all the indebtedness of Earl R. Young, signed a so-called creditor's agreement, addressed to:

"In re Federal Land Bank loan of Earl Young. Application No. J-181063 or Loan No. 71336-M.

"In re Land Bank Commissioner's Loan of Earl Young.

"Application No. ..............
or Loan No. 22069.

"Through the National Farm Loan Association, "To The Federal Land Bank of St. Paul for itself and/or as agent for the land bank commissioner and Federal Farm Mortgage Corporation:

"For the purpose of inducing you to make, and in consideration of the making by you of a loan or loans to Earl Young   *   *   *   and for the purpose of inducing you to release, distribute and pay out the proceeds from such loan or loans, I, the undersigned, being a creditor of those receiving such loans to the extent of $1,000, do undertake, promise, agree and represent as follows:

"That I will accept in full and complete settlement and payment of my above claim the sum of $1,000, and that I have not, directly or indirectly, made or entered into any agreement or understanding with any one whomsoever whereby I shall receive from said debtors any note, mortgage or other consideration save and except the sum last above mentioned; that when such sum has been received by me that said debtors will not remain indebted to me upon any account whatsoever; that I will not, after having received such sum, attempt in any way, directly or indirectly, to collect, nor will I accept, from said debtors upon and because of the above claim anything of value whatsoever.

"This agreement is for the express benefit of the debtors or any of them, as well as the Federal Land Bank of St. Paul, the land bank commissioner, and the Federal Farm Mortgage Corporation."

Plaintiff was evidently aware of the fact that it could not obtain more than $1,000 out of the Federal loan and took the mentioned means to obtain indirectly the extra $900.

Defendants had no farm and no need of farm tools and possession by the father was never changed.

Defendants made default in paying the instalments due under the bill of sale to them, and plaintiff, after demand for possession of the mortgaged farm implements, brought this action in replevin,

and upon trial of the cause the court excused the jury and entered judgment in favor of defendants on the ground that public policy barred plaintiff from having recovery.

The instruments upon which this suit was predicated were wholly tentative until delivered on the very day plaintiff participated in the Federal bank loan and then, in order to conceal the subterfuge employed, were turned over to plaintiff's agent in order that his representation might have a semblance of truth.

The government agent was misled by want of the knowledge we now have. The whole transaction engineered by plaintiff's agent was a transparent sham to circumvent a beneficent public policy. The farmer was helpless; his sons were drafted by plaintiff as mere dummies for its evasive purpose.

Plaintiff contends that, inasmuch as the government is not here complaining, the individual victims are without remedy. Application of the doctrine of public policy may benefit an individual in a particular instance but that fact does not render it supine. The governmental policy was frustrated in part by the calculated acts of plaintiff and this action is founded upon that circumvention. The beneficent purpose of the Federal loan is to enable persons in debt, and without ability to make payment, to constitute the Federal agency the sole creditor and thereby eliminate, by way of compromise, all other creditors.

Does the fact that Mr. Young and his sons acceded to the demand of plaintiff, in the evasion accomplished, bar defendants, who became parties thereto at the request of plaintiff and merely in aid of their financially distressed father, from invoking the doctrine of public policy?

The instance at bar falls within what we said in *Meek* v. *Wilson,* 283 Mich. 679. In that case we held that the victim could invoke the doctrine of public policy.

Plaintiff was under no obligation to scale its claim but when it sought to circumvent the purpose of the Federal loan, it adopted methods and means inhibited by public policy and may not have recovery in this action.

The judgment is affirmed, with costs to defendants.

BUTZEL, C. J., and BUSHNELL, SHARPE, POTTER, CHANDLER, NORTH, and MCALLISTER, JJ., concurred.