## GEEL v. VALIQUETT.

1. VENDOR AND PURCHASER—ACTION TO RECOVER BALANCE OF PURCHASE PRICE—TENDER OF DEED.

Tender of deed must be made before bringing action on land contract to recover balance of unpaid purchase price.

2. ACTION—TENDER OF DEED—PROCEDURE.

Rule that tender of a deed is a condition precedent to action on a land contract for balance of the purchase price is purely a question of procedure or remedy and not one of substantive law.

3. JUDGMENT—RES JUDICATA—DISMISSAL OF ACTION PREMATURELY BROUGHT.

Dismissal of action to recover balance due on a land contract on ground that deed had not been tendered was solely a determination that the action was prematurely brought, was not *res judicata* of the vendors' claim, did not estop them from bringing another action, and since the purchaser's defense of nontender was not an admission of the validity of the instrument vendors had sued on, purchasers were not estopped from claiming fraud as basis for cancellation of deed and land contract in a subsequent suit.

4. ABATEMENT AND REVIVAL—EQUITY—CANCELLATION OF INSTRUMENTS—ACTION AT LAW UNDER LAND CONTRACT.

A court of equity has jurisdiction of suit to cancel a land contract and deed on ground of fraud notwithstanding pendency of an action at law by vendors under land contract.

5. BANKS AND BANKING—PUBLIC POLICY—COMPROMISE OF DEBTS—FEDERAL LOANS.

Purpose of a Federal land bank and land bank commissioner's loan is to enable person in debt, and without ability to make payment, to constitute the Federal agency the sole creditor and thereby eliminate, by way of compromise, all other creditors (48 Stat. at L. 48).

---

* Continued from Vol. 291.

6. CONTRACTS—EVASION OF PUBLIC POLICY—FEDERAL LOANS.

After real estate broker had enabled purchaser of a farm to obtain deed from vendor, the broker's brother, incident to purchaser's obtaining loans from Federal land bank and land bank commissioner, but failed to notify Federal authorities of claim of lien by reason of unrecorded assignment of vendor's interest and subsequent to consummation of the Federal loans procured a deed from the purchaser and gave him a land contract for amount of previous balance due, such transaction amounted to a studied attempt to circumvent public policy as expressed in Federal farm loan act as amended by the emergency farm mortgage act of 1933; hence deed to broker and his land contract back were void (39 Stat. at L. 360, 48 Stat. at L. 48).

7. BANKS AND BANKING—FEDERAL LAND BANK—LOCAL FARM LOAN ASSOCIATIONS—PUBLIC POLICY—NOTICE.

Since a local farm loan association is an entirely different entity from the Federal land bank and is not the bank's agent, fact that the local association's secretary and treasurer knew of broker's attempted circumvention of purpose of Federal statutes by secret procurement of mortgagor's subsequent obligation to cover a previous unrecorded lien upon the farm, contrary to public policy of compromising the mortgagor's debt and constituting the Federal agency his sole creditor as provided in the Federal farm loan act as amended by the emergency farm mortgage act of 1933, did not constitute notice to the Federal land bank (39 Stat. at L. 360, 48 Stat. at L. 48).

8. CONTRACTS—PUBLIC POLICY—FEDERAL FARM LOANS—ATTEMPTED CREATION OF SECOND MORTGAGE TO COVER ANTECEDENT LIEN.

Deed and land contract, executed by mortgagor under Federal farm loan act as amended by emergency farm mortgage act and junior to the Federal mortgage, which were procured by a real estate broker in circumvention of the pertinent Federal statutes under which mortgage was executed in order to secure an antecedent lien, were void because against public policy expressed in statutes designed to constitute Federal agency as the sole creditor of the farm owner and a fraud upon such owner notwithstanding lien created by such instruments was expressly a second mortgage (39 Stat. at L. 360, 48 Stat. at L. 48).

9. CANCELLATION OF INSTRUMENTS—PUBLIC POLICY—LACHES.
   In suit to cancel deed and land contract which are found to have been void when executed because against public policy, the doctrine of laches has no application since no action of the parties could validate the instruments.

Appeal from St. Clair; Telfer (Laurie O.), J. Submitted October 10, 1939. (Docket No. 96, Calendar No. 40,774.) Decided December 20, 1939.

Bill by Frank B. Geel and wife against James L. Valiquett and wife to set aside a deed and land contract and for an injunction. From decree rendered, defendants appeal. Affirmed.

*Stewart & Black,* for plaintiffs.

*Edward E. Trotman,* for defendants.

SHARPE, J. This is an equity proceeding to set aside and cancel a deed and land contract between plaintiffs and defendants.

The property involved in this suit is an 80-acre farm in China township, St. Clair county, and it has been farmed and occupied since October, 1930, by plaintiffs Frank B. Geel and wife. Prior to October, 1930, the farm was owned by Emma E. Porter and was sold on land contract to one Gerber. On October 14, 1930, the defendant James L. Valiquett, who was a Detroit real estate broker, arranged a deal whereby Emma E. Porter deeded the farm to Sidney Valiquett who executed a purchase money mortgage to Emma E. Porter for $4,800. On the same day, Sidney Valiquett sold the farm on land contract to plaintiffs, Geel and wife. The contract provided that the Geels make payments on the Porter mortgage and a lump sum payment to the vendor, Sidney Valiquett, on a specific date.

The Porter mortgage became in default and was foreclosed and the property purchased at sheriff's sale on November 20, 1933, for $5,452 by Mrs. Porter's administrator.

During the redemption period, a Federal farm loan was secured on this property. The loan was negotiated through the National Farm Loan Association of Port Huron, Michigan. The total commitment for Federal mortgage loans on the farm was $5,000; one mortgage loan in the sum of $2,300 was granted by the Federal Land Bank of St. Paul and another in the sum of $2,700 was granted by the land bank commissioner. The loan was granted with instructions, "Pay all liens on security offered and chattel mortgage." The loans were not closed until a deed from Sidney Valiquett to plaintiffs was approved by the Federal land bank and a receipt executed by the vendor of the land conveyed for full payment of purchase money.

On March 12, 1934, Sidney Valiquett executed a deed of the property to Frank B. Geel and wife. This deed was recorded December 10, 1934. And on November 23, 1934, Sidney Valiquett executed the following receipt:

"Receipt by vendor for full payment of purchase money to the Federal land bank and the land bank commissioner. St. Paul, Minnesota.

"The undersigned vendor of all or part of the real property described below, hereby expressly and specifically acknowledges full and complete payment of the purchase price thereof, and states that there is no further sum whatsoever due the undersigned thereon, and hereby releases in full any claim of interest in, or lien on, all of said property."

A discharge of the Porter mortgage was recorded. December 10, 1934. The record is silent as to how

the proceeds of the loans were allotted and divided after payment of delinquent taxes and expenses of the loans.

The present suit arises out of transactions entered into March 12, 1934, at which time defendant James L. Valiquett delivered to plaintiffs the warranty deed from Sidney Valiquett to plaintiffs; and a deed from plaintiffs to defendants of the property was signed by plaintiffs and a land contract was executed by defendants to plaintiffs.

James L. Valiquett is the brother of Sidney Valiquett and first comes into the picture as the real estate broker who represented Mr. Geel in 1930 in the purchase of the farm in question. On October 7, 1933, and pending the foreclosure of the Porter mortgage, Sidney Valiquett assigned the Geel land contract, upon which there was due $6,815 and interest, to defendants.

On October 14, 1933, defendant James L. Valiquett wrote the following letter to Geel:

"This is to advise that I have taken over the interest of my brother, Sidney M. Valiquette, in the land contract existing between he and yourself covering the farm on which you live. I have taken warranty deed and assignment of contract. Enclosed herewith find copy of said assignment, which you should attach to your contract.

"I am anxious to know what is being done regards the mortgage foreclosure. I have been looking for a letter from you as to what has happened since I forwarded the application for loan which I received from the Federal Land Bank of St. Paul. It is imperative that something be done at once in regards to a satisfactory settlement with the Porter estate, as I cannot jeopardize my rights in the land contract, with the mortgage under foreclosure.

"Please let me hear from you at once."

Defendant took an active part in aiding Mr. Geel to secure the Federal loan and mortgage because, as he testified, he had an equity to save. He consulted Mr. Allington, secretary of the National Farm Loan Association of Port Huron, and wrote the following letters:

On January 24, 1934, defendant wrote the attorney representing the Porter estate as follows:

"I have compiled all the expenses to be deducted from the Geel mortgage (Fed. Loan) and the total amounts to about $1,290, namely, cost of loan $150, chattel mortgage $320, all taxes except 1933, $670, 1933 taxes, estimated $150, total $1,290, the mortgage being $5,000, would leave $3,710 for the Porter estate.

"I have everything about ironed out and, I believe, the mortgage can be consummated in the next few days, however, before we make definite arrangements, we should have a commitment from the Porter estate as to whether or not they will accept about $3,700 in full settlement of their interest and upon receipt of said sum quitclaim all of their right, title and interest in the property securing their mortgage, namely, the farm now being purchased by Frank Geel. Will you kindly advise me as to what they will do in this matter, so that we can be governed accordingly."

On February 1, 1934, defendant wrote Mr. Allington as follows:

"Re Frank Geel loan. I am working on the deal with Geel whereby he can acquire deed of his farm. I expect to have things in shape by next week and he can then execute the mortgage, etc."

From the record it appears that on February 23, 1934, defendant wrote another letter to Allington, copy of which does not appear in the record. On the

same day, defendant wrote the attorney for the Porter estate further regarding the loan as follows:

"I have been waiting for an answer from you regards the Geel mortgage. Please write me at once and advise as to what the Porter estate has decided. I cannot hold up the matter much longer as the Fed. Land Bank may cancel the new loan. It has been held up now for nearly five weeks. Trusting to hear from you at once."

On March 1, 1934, mortgages were given by Frank B. Geel and wife to the Federal Land Bank of St. Paul in the sum of $2,300 and to the land bank commissioner for $2,700. These mortgages were recorded August 3, 1934.

On March 12, 1934, Mr. and Mrs. Valiquett and Mr. Manore went to the Geel home. Mr. Geel, who was then about 67 years of age, was confined to his bed because of a fall from which a blood-clot resulted. The deed dated March 12, 1934, from Sidney Valiquett to the Geels was delivered to plaintiffs. Geel and wife then signed a warranty deed conveying the property to defendants James L. Valiquett and wife. This deed was not dated and the signatures were not notarized at this time. The deed provided:

"The said Frank B. Geel and Clara E. Geel, parties of the first part, * * * do covenant, grant, bargain and agree to and with the said parties of the second part, their heirs and assigns, that at the time of the ensealing and delivery of these presents they are well seized of the above-granted premises in fee simple; that they are free from all incumbrances whatever except such, if any, as are excepted from the covenant following, and that they will, and their heirs, executors, and administrators shall warrant and defend the same against all lawful claims whatsoever, except a mortgage of record which second parties agree to assume and pay."

A land contract, also undated, was signed by the parties wherein defendants sold the premises to plaintiffs. The contract provided:

"In consideration of the sum of $1 and other valuable considerations paid to the seller by the purchaser prior to the delivery hereof, the receipt of which is hereby acknowledged, and the payment of the additional sum of $7,628 by the purchaser, together with interest on any part thereof at any time unpaid at the rate of six per cent. per annum. * * * The property described is under mortgage of $5,200 to the Federal Land Bank of St. Paul, Minnesota. The purchaser herein shall make all payments on said mortgage as they become due and payable and in addition thereto shall, on or before July 14, 1935, pay the sum of $2,428 and interest thereon, from March 14, 1934, representing the seller's equity or interest in said property and upon such payment of such equity and interest and the sums due upon said mortgage, they shall have delivered to them a warranty deed of said land by the seller, subject to the balance due upon the said mortgage and any act of purchaser for taxes or assessments since date hereof."

In April, 1937, defendants herein commenced an action in assumpsit in St. Clair county against plaintiffs herein to recover the entire balance due on the land contract. A jury returned a verdict of no cause for action.

On December 5, 1938, defendants herein filed an action in assumpsit in the circuit court of Wayne county upon the March 12th land contract. On December 13, 1938, plaintiffs filed the present bill to restrain defendants from proceeding in the law action and to cancel and set aside the deed and land contract. The lower court granted a temporary injunction and upon trial entered a decree in favor of plaintiffs. Defendants appeal.

Plaintiffs claim that the deed and land contract are illegal and void as against public policy, because they were secured to circumvent the purpose of the applied-for Federal loans and to preserve, 100 per cent., an equity which in any event would have been foreclosed out of existence on November 20, 1934; that the defendants committed a fraud on plaintiffs in procuring signatures to the deed and land contract; and that the verdict and judgment in the previous law case did not affect or prevent disposition of this case on the merits.

Defendants contend that there was a good and valuable consideration for the warranty deed and land contract of March 12, 1934; that the warranty deed and land contract of March 12, 1934, are valid under the Federal farm loan act (see 12 USCA, § 641 *et seq.*) and not opposed to public policy; that defendants were not guilty of fraud; that plaintiffs are guilty of laches; that plaintiffs' failure to use the defense of fraud and public policy in the first lawsuit between the parties estops them from using fraud and public policy as a basis for their claims in this cause; and that there is no equity in the bill of complaint as the plaintiffs have the same right to use their present claims as a defense to the lawsuit now pending in the circuit court.

We shall consider first defendants' contention that the Geels by pleading fraud in the law action of April, 1937, and questioning Mr. Valiquett as to it, waived their right to claim fraud in this case. In that case, the Valiquetts commenced action in assumpsit to recover the *entire balance* on the land contract. The declaration alleged tender of the deed in conformity to the contract. To this declaration, the Geels, plaintiffs herein, pleaded no tender of deed as a prerequisite to maintenance of the action and other defenses including fraud. The plaintiffs

herein concede that they requested the court to submit to the jury the question of tender only. The jury returned a verdict of no cause of action in favor of the Geels. The judgment was not on the merits.

In *St. John* v. *Richard,* 272 Mich. 670, the court said:

"It is well settled in this State that before one may sue on a land contract to recover the balance of the unpaid purchase price, he must tender a deed of the premises contracted to be sold. *Stewart* v. *McLaughlin's Estate,* 126 Mich. 1; *Carter* v. *Reaume,* 159 Mich. 160; *In re Urban's Estate,* 271 Mich. 16."

And in *McColl* v. *Wardowski,* 280 Mich. 374, the court held that this rule is purely a question of procedure or remedy and not one of substantive law.

Defendants rely upon the rule:

"A man may not take contradictory positions, and where he has a right to choose one of two modes of redress, and the two are so inconsistent that the assertion of one involves the negation or repudiation of the other, his deliberate and settled choice of one, with knowledge, or the means of knowledge, of such facts as would authorize a resort to each, will preclude him thereafter from going back and electing again." *Thompson* v. *Howard,* 31 Mich. 309.

This rule does not apply here. Defendants (Geels) by making the defense of non-tender did not in any manner admit the validity of the instrument sued on, nor did the verdict determine that question. The judgment was solely a determination that the action was prematurely brought. This action was not *res judicata* of the Valiquetts' claim and did not work an estoppel upon them to bring another action.

In *Kolodziejczak* v. *Bak,* 220 Mich. 274, this court said:

"The right to recover was denied solely because the suit was begun before the cause of action accrued. The judgment entered will be no bar to a subsequent suit for the same cause of action."

See, also, *Whitney* v. *Bayer,* 101 Mich. 151. The law action did not work an estoppel upon the Geels to claim fraud in a subsequent action.

Defendants next contend that the court of equity has no jurisdiction in this cause because plaintiffs can interpose as a defense to the law action now pending all claims that they make in this cause. In this suit the plaintiffs are asking that the court not only set aside the land contract but also the deed. This case falls clearly within the language of *Mulheron* v. *Henry S. Koppin Co.,* 221 Mich. 187, 192, where the court said:

"In *Fred Macey Co.* v. *Macey,* 143 Mich. 138 (5 L. R. A. [N. S.] 1036), Mr. Justice Grant and Mr. Justice Hooker, both of whom wrote in the case, fully review the authorities and sustain the jurisdiction of a court of equity. The opinions are so full in that case that we refrain from further citation of authorities on this question. We have not, however, gone to the length of holding that courts of equity have concurrent jurisdiction in all cases where fraud is involved; and where a money decree only is sought jurisdiction in equity has been denied in numerous cases, illustrative of which are *Flint* v. *Le Heup,* 199 Mich. 41, and cases cited at page 49. But where something beyond a money decree is sought and the interposition of a court of equity is necessary to work out the rights of the parties this court has not been grudgeful in entertaining equity jurisdiction. In the instant case cancellation of a written instrument is sought and relief from a forfeiture asked. Both furnish grounds for equitable relief, and the court of equity having assumed jurisdiction will re-

tain it to work out the rights of the parties. The plaintiffs have sought the proper forum.''

See, also, *Austin* v. *Ash,* 232 Mich. 251; *Haylor* v. *Grigg-Hanna Lumber & Box Co.,* 287 Mich. 127; *Federal Land Bank of St. Paul* v. *Koslofsky,* 67 N. D. 322 (271 N. W. 907).

This brings us to the inquiry whether the deed and land contract are illegal and void as against public policy. The loan was secured under the emergency farm mortgage act of 1933, 48 Stat. at L. 48 (see 12 USCA, §§ 1016-1019), which authorized the reconstruction finance corporation and directed that it make available to the land bank commissioner $200,-000,000 to be used for the purpose of making commissioner's loans. This act was an amendment to the Federal farm loan act of July 17, 1916, 39 Stat. at L. 360 (see 12 USCA, § 641 *et seq.*).

The title of the act reads:

''An act to relieve the existing national economic emergency by increasing agricultural purchasing power, to raise revenue for extraordinary expenses incurred by reason of such emergency, to provide emergency relief with respect to agricultural indebtedness, to provide for the orderly liquidation of joint stock land banks and for other purposes.'' (48 Stat. at L. 31.)

Section 32 of the act (48 Stat. at L. 48) provides:

''Loans under this section shall be made for the following purposes only: (1) Refinancing, either in connection with proceedings under chapter 8 of the bankruptcy act of July 1, 1898, as amended (relating to agricultural compositions and extensions), or otherwise, any indebtedness, secured or unsecured, of the farmer.''

Section 35 of the act (48 Stat. at L. 49 [12 USCA, § 1019]) provides:

"Any person who shall knowingly make any material false representation for the purpose of obtaining any loan under this title, or in assisting in obtaining any such loan, shall, upon conviction thereof, be fined not more than $1,000, or imprisoned not more than six months, or both."

In *International Harvester Co.* v. *Young,* 288 Mich. 436, this court said:

"The beneficent purpose of the Federal loan is to enable persons in debt, and without ability to make payment, to constitute the Federal agency the sole creditor and thereby eliminate, by way of compromise, all other creditors."

It appears that the Federal loan in this case was granted for the purpose of aiding Mr. Geel to refinance his indebtedness. The following appears in the remittance statement issued by the Farm Credit Administration, the Federal Land Bank of St. Paul and the Federal Land Bank of St. Paul as agent of the land bank commissioner:

"This loan was granted with instructions, 'Pay all liens on security offered and chattel mortgage.'"

And the deposition of Theodore A. Veldey, assistant treasurer of the Federal Land Bank of St. Paul whose duty during 1933 and 1934 was to supervise the closing of all mortgage loans made by the Federal Land Bank of St. Paul and all mortgage loans made in Michigan by the land bank commissioner, states:

"The loans were predicated upon Geel being the owner of the premises. In fact, he stated in his application that when the loans were closed he would be the owner."

The question before us is, whether the defendants, under the circumstances of this case, have acted con-

trary to the purpose of the act so that the deed and land contract in question here are void.

We do not find in the briefs nor after independent research any case which is controlling here. Plaintiffs rely upon the recent case of *International Harvester Co.* v. *Young, supra,* which arose under the emergency farm mortgage act. There a prior lien holder after execution of a so-called creditor's agreement and acceptance of payment secured a bill of sale on farm implements covered by their chattel mortgage and sold them on instalment contract to the original owner's sons, who in turn gave a note and chattel mortgage. This court said:

"The instruments upon which this suit was predicated were wholly tentative until delivered on the very day plaintiff participated in the Federal bank loan and then, in order to conceal the subterfuge employed, were turned over to plaintiff's agent in order that his representation have a semblance of truth.

"The government agent was misled by want of the knowledge we now have. The whole transaction engineered by plaintiff's agent was a transparent sham to circumvent a beneficent public policy. The farmer was helpless; his sons were drafted by plaintiff as mere dummies for its evasive purpose.

"Plaintiff contends that, inasmuch as the government is not here complaining, the individual victims are without remedy. Application of the doctrine of public policy may benefit an individual in a particular instance but that fact does not render it supine. The governmental policy was frustrated in part by the calculated acts of plaintiff and this action is founded upon that circumvention."

Although the facts in that case differ from those in the case at bar, the conclusion is unescapable that defendants herein made a studied attempt to circumvent public policy. As far as the Federal land bank

and the land bank commissioner are concerned, defendants' conduct was a subterfuge from the time the Federal mortgage was applied for until defendants recorded the deed from Geel to themselves on March 8, 1937, and wrote to the land bank on October 26, 1938.

Defendant James L. Valiquett took an active part in securing a Federal loan on this property. He knew that Federal mortgages would be predicated upon Geel being the owner of the land. This is evidenced by his letter of February 1, 1934, to Allington. He knew that a Federal commitment of $5,000 was made and that from this loan a certain amount would be paid to the Porter estate and on certain other liens. He made no effort to notify the land bank of his claimed lien by virtue of the assignment of the Geel land contract from his brother. He testified that a warranty deed to him from his brother Sidney had never been executed and on March 12, 1934, he abandoned his claim by virtue of the assignment and made the following entry on the assignment: "Voided this 3/12/34 on account of deed being executed direct to Frank B. Geel and Clara E. Geel by the said Sidney M. Valiquette." He knew that a Federal loan was then pending. In fact, he gives as a reason for not dating the deed and land contract that he desired to incorporate the first mortgage lien therein. The deed was dated and the signatures notarized March 28, 1935, subsequent to the consummation of the Federal loans. Even as late as November 23, 1934, when defendant witnessed his brother's signature on the receipt and knew that the loan money was about to be paid to lien holders, he did not report his lien.

Defendants claim that the land bank was notified of this transaction through the secretary and treasurer of the local farm loan association. It has been

repeatedly held that the local farm loan association is an entirely different entity from the land bank and not an agent of the land bank, and that notice to the loan association is not notice to the land bank.

In *Worrell* v. *Federal Land Bank of Baltimore,* 174 Va. 175 (3 S. E. [2d] 402), the court said:

"The contention is urged that the bank was affected with notice of the existence of the E. W. and T. H. Worrell deed of trust because the secretary-treasurer of the local association and the attorney who made the abstract had been informed and knew that it was extant. This contention is based on the assertion that they were agents of the lending bank and that notice to them was notice to their principal. The evidence shows that this is untenable. The local farm association is an entirely different entity from the bank. They are not allied in any way that would impute the knowledge of the officials of the local unit to the bank. On the contrary, their relations negative such result. The local association is composed of stockholders who are indebted to the bank and its structure is such that it is a co-obligor of the bank with each of its constituents. Every case which we have found that was concerned with a like contention has held that there is no relation of principal and agent between the lending bank and the like persons referred to.   *   *   *

"See *Bjorkstam* v. *Federal Land Bank of Spokane,* 138 Wash. 456 (244 Pac. 981); *Byrne* v. *Federal Land Bank of St. Paul,* 61 N. D. 265 (237 N. W. 797); *Federal Land Bank of Columbia* v. *Shingler,* 174 Ga. 352 (162 S. E. 815); *Federal Land Bank of Omaha* v. *Omaha National Bank,* 118 Neb. 489 (225 N. W. 471); *Holvick* v. *Black,* 57 N. D. 270 (221 N. W. 71); *Federal Land Bank of Columbia* v. *Gaines,* 290 U. S. 247 (54 Sup. Ct. 168); *Whitaker* v. *Fulton* (Tex. Civ. App.), 17 S. W. (2d) 1079."

Defendants rely upon the case of *Bay City Bank* v. *White,* 283 Mich. 267; the facts in that case clearly

distinguish it from the case at bar. The conclusion is unescapable that the transaction involved here was secret.

Defendants claim that there was no fraud on the bank or government because the lien was expressly a second mortgage. The same contention or claim was made in *Meek* v. *Wilson*, 283 Mich. 679. Although that case involved a home owners loan mortgage and the plaintiff was an old lien holder, the language and reasoning is applicable here. The court said:

"Its purpose was not to assist holders of liens against the property, but to enable owners of homes to save their homes from foreclosure by advancing on first mortgages, sums to be used to pay off liens and to lighten the burdens of the home owners. Any benefit that might accrue to lien holders would be incidental. The H. O. L. C., in refinancing a home owner's obligations, sought to readjust them in accordance with his ability to make payments. The salutary effect of such a readjustment would be nullified if a lien holder were permitted, without regulation, to defeat the purpose of the home owners' loan act. An agreement exacted by a lien holder which tends to counteract the relief of the home owner sought by the act is contrary to the purpose of the act and to the regulations adopted thereunder. * * *

"Since the exacting of the second mortgage was contrary to the purpose of the act and to the regulations, it is contrary to public policy and unenforceable."

See, also, *Smeltzer* v. *McCrory* (Tex. Civ. App.), 101 S. W. (2d) 850.

The case at bar differs from that of *Briley* v. *Oldham*, 132 Tex. 550 (124 S. W. [2d] 854), where the court held that there is nothing found in the farm mortgage act of 1933 which implies an attempt on the part of Congress to impose any restraint on the

alienation of property mortgaged to the land bank and the land commissioner in conformity to the act.

We are in accord with the finding of the trial court that there was fraud in the transactions relating to the deed and land contract, and that the same should be declared void as against public policy.

It is urged by defendants that plaintiffs are guilty of laches and rely upon *Merrill* v. *Wilson,* 66 Mich. 232, where we said:

"A person * * * who has been defrauded, must act promptly; and, if he would repudiate the contract, he must do nothing in affirmance of it after ascertaining the facts."

In the case at bar, we hold that the deed and land contract are void as against public policy. In such cases the doctrine of laches has no application.

In 6 R. C. L. p. 819, it is said:

"However, the doctrine of estoppel by conduct or by laches has no application to a contract or instrument which is void because it violates an express mandate of the law or the dictates of public policy. Such a contract has no existence whatever. It has no legal entity for any purpose, and neither action nor inaction of a party to it can validate it; and no conduct of a party to it can be invoked as an estoppel against asserting its invalidity. The authorities are uniformly agreed on this principle."

The decree of the trial court is affirmed, with costs to plaintiffs.

BUTZEL, C. J., and WIEST, BUSHNELL, POTTER, CHANDLER, NORTH, and MCALLISTER, JJ., concurred.